## JONES *v.* IRELAND.

The fact that the words "ten per cent.," in a promissory note, are written in a different ink from the body of the instrument, and from the signature of the maker, does not cast upon the note such suspicion, that the plaintiff, before he can offer it in evidence, is bound to show that the words were made by authority of the maker, or before the execution of the note.

Whether a promissory note has been altered or not, is a question of fact for the jury, and not for the court.

By demurring to the evidence, a party cannot withdraw a question of fact from the jury, and submit its decision to the court.

The facts must be first ascertained and found, and admitted on the record, before a party can demur to the evidence.

By demurring to the evidence, the demurrant admits the truth of the facts found, and every conclusion in favor of the other party, which the evidence conduces to prove, or which the jury might have inferred from it, in favor of his opponent.

The object of a demurrer to evidence, is to obtain the opinion of the court upon the sufficiency of the evidence in law, to maintain the issue in fact.

An offer to demur to evidence, is not *stricti juris.*

If there be no colorable cause of demurrer to evidence, the court should not allow it.

Before joining in a demurrer to evidence, the plaintiff has the right to require an admission on the record, of the truth of all the facts that the evidence offered by him, tended to prove, or that the jury might infer from it in his favor.

Without such an admission upon the record, the plaintiff is not bound to join in the demurrer.

And if the plaintiff does join in a demurrer to evidence, without such an admission upon the record, the court can pronounce no judgment on the demurrer.

Where in a proceeding to foreclose a mortgage, the petition alleged, that M. sold to the defendant, certain lands for $1,800, and to secure the payment of the purchase money, and ten per cent. interest, defendant mortgaged the lands back to M.; and that three promissory notes were given, which the mortgage was intended to describe, one of which had been assigned to plaintiff, and was due and unpaid; and where the answer of the defendant admitted the purchase of the land, but denied that the notes were executed to bear ten per cent. interest; and where, after *oyer* of the note, the defendant denied its execution, under oath, and that it was his deed, upon which issue was taken by the plaintiff; and a jury was impanneled to try the issue of fact; and where the words "ten per cent.," in the note, were written in pale *blue* ink, while the body of the note, was written in pale *black* ink, and the signature of the maker in black ink of a different color from that of the body of the note, but there was no erasure or interlineation on the face of the

note; and where the defendant objected to the note being given in evidence, and the court thereupon ruled, after an inspection of the note and mortgage, that there was sufficient on the face of the note, to cast a cloud upon it, which plaintiff must explain, before he could recover, and that the note might be given in evidence, by complying with this rule; and where the note and mortgage were then given in evidence, and read to the jury, and the defendant rested his case, without any attempt to comply with the rule laid down by the court, and thereupon the defendant demurred to the evidence, which demurrer was sustained, because the ruling of the court had not been complied with, and judgment rendered for the defendant; *Held*, 1. That there was nothing on the face of the note, requiring explanation by the plaintiff, in order to maintain his action: 2. That the demurrer to the evidence admitted the fact in issue, that the note was the deed of the defendant, and must be so treated; and 3. That the court erred in sustaining the demurrer, and rendering judgment for the defendant.

## *Appeal from the Jones District Court.*

PETITION to foreclose a mortgage. The plaintiff claims as assignee and holder of a note given by defendant, dated August 29th, 1853, payable eighteen months after date, to J. H. Merritt, or bearer, for five hundred dollars, with ten *per cent.* interest from date. He alleges, that Merritt sold to defendant certain lands, for eighteen hundred dollars, and that to secure the payment of the purchase money and *ten per cent.* interest, defendant mortgaged the land back to Merritt; and that three promissory notes were given, which the condition of the mortgage was intended to describe, one of which is the note sued on, which had been assigned to plaintiff, and was due and unpaid. He asks judgment for the note and *ten per cent.* interest, and a decree of foreclosure against the mortgaged premises, to satisfy the same. The note and mortgage are exhibited, and made part of the petition.

The answer of defendant, admits the purchase of the land, but denies that the notes were given, bearing ten per cent. interest; and having prayed *oyer* of the note sued on, and the same being read and shown to him, he says that the "same is not his deed, and denies the execution of the same, and that the note is a forgery." The answer was sworn to. The plaintiff's replication takes issue on the fact of the note being the deed of the defendant; and a jury were impanneled to

Jones v. Ireland.

try the question of fact. The defendant objected to the note being given in evidence. And thereupon the court ruled, that from an inspection of the note, coupled with the mortgage, there was sufficient on its face, to cast a cloud upon it, which plaintiff must explain and clear away, before he could recover; and that the note might be given in evidence, by complying with this rule. The note and the mortgage were then given in evidence, and without further objection, read to the jury, and plaintiff rested. The defendant demurred to the evidence. The note had the words " *ten per cent.*" written in it, in different ink from the body of the instrument, and from the signature of the maker, and this was all the evidence. It was claimed, that the evidence was not sufficient to entitle the plaintiff to recover, without some explanation on his part of the alleged alteration of the note. The demurrer was sustained, because the ruling of the court had not been complied with, and judgment rendered for the defendant. Plaintiff excepts, and on appeal to this court, assigns the following errors: 1. The court erred in sustaining the demurrer to the evidence offered by the plaintiff; 2. In taking the case from the jury, and deciding a question of fact.

*Smith, McKinlay & Poor*, for the appellant.

1. For the effect of a demurrer to evidence, see 4 Phillipps on Ev. 784, and authorities there cited.

2. If blank spaces be left to be filled after execution, the consent of the party executing, that they shall be afterwards filled, is to be implied. Byles on Bills, 254, referring to *Wiley* v. *Moon*, 17 S. & R. 438; *Smith* v. *Crooker*, 5 Mass. 538; *Jordan* v. *Neilson*, 2 Wash. 164; *Boardman* v. *Gore*, 1 Stewart, 517; *Bank* v. *Cury*, 2 Dana, 142; *Stahl* v. *Berger*, 10 S. & R. 170; *Commonwealth* v. *McCord*, 4 Dana, 191; *Douglass* v. *Scott*, 8 Leigh, 43; *Richmond Manufacturing Co.* v. *Davis*, 7 Blackf. 412. We refer also to *Cumberland Bank* v. *Hall*, 1 Halst. 215; 2 Greenl. 147; *Carviss* v. *Tattersal*, 2 M. & G. 890. The fair inference from the face of the note is, that it was drawn before the rate per cent. was agreed on,

and that it was filled after it was agreed on, and before the execution of the note.

*Whitaker & Grant,* for the appellee, cited the following authorities: Bouv. Law Dic. title Blank; Byles on Bills, 259; *Knight* v. *Clements,* 8 Adolph. & E. 215–35, Eng. Com. Law, 378; *Clifford* v. *Parker,* 2 Mor. & G. 909–40; Eng. Com. Law, 917; *Carviss* v. *Tattersal,* 2 Ib. 888; *Heriman* v. *Dickerson,* 5 Brig. 183; 15 Eng. Com. Law, 409; 2 Parsons on Cont. 229, note; Greenleaf's Ev. § 564, note 1; *Jackson* v. *Jacoby,* 9 Cow. 125; *Warring* v. *Smith,* 2 Barr. 119; 13 N. Hamp. 385; *Horrich* v. *Malen,* 22 Wend. 388; *Warren* v. *Layton,* 3 Harrington, 404; *Tillou* v. *Clinton & E. M. Ins. Co.,* 7 Barb. 564; *Walters* v. *Short,* 5 Gilm. 252; *Simpson* v. *Stackhouse,* 9 Barr. 186; *Paine* v. *Edsell,* 19 Penn. 178; *Wilde* v. *Ormsby,* 6 Cush. 314; *Warrington* v. *Early,* 22 E. & E. 208.

STOCKTON, J.—The issue to be tried was, whether the note sued on was the note of the defendant. The affirmation of this issue, lay on the plaintiff, and to establish it, he gave in evidence to the jury, the note and mortgage sued on. The defendant thereupon demurred to the evidence, and the cause of demurrer alleged is, "that the note given in evidence, had the words *ten per cent.* written in it, in different ink from the body of the instrument, and the signature of the maker." The demurrer was sustained by the court, because the plaintiff, being ruled by the court so to do, offered no evidence to clear away the cloud adjudged to exist on the face of the note, and judgment was rendered for defendant. Our first inquiry is, what were the facts proved? The original note and mortgage are, by agreement, produced for inspection in this court. The mortgage, dated August 29th, 1853, is given to secure the payment of "the following sums of money, at the times hereinafter stated, that is to say, the sum of $800, to be paid on or before the 1st day of January, 1854; $500, *to be paid within eighteen months from this date;* and $500, to be paid in thirty-six months from this date—*all*

*said sums to bear interest from this date*—being three several promissory notes, bearing date with this indenture." The note sued on, is in the following words: " $500.   Eighteen months after date, we or either of us, promise to pay Joseph H. Merritt, or bearer, the sum of five hundred dollars, for value received, with ten per cent. interest from date.   August 29th, 1853.   JAMES W. IRELAND."

The words *ten per cent.*, are written in pale blue ink, apparently in the same handwriting as the remainder of the note, which is written in pale black ink.   The signature of the defendant, is in a different handwriting, and in black ink, of a different color from that of the body of the note.   There is no erasure, and no interlineation on the face of the note. The defendant claims, that taking the note and the mortgage together, the words in blue ink, cast upon the note such suspicion, that the plaintiff was bound to show that they were made by authority of defendant, or before the execution of the note; and that otherwise the plaintiff could not recover. Of this opinion was the District Court, in sustaining the demurrer, and rendering judgment for defendant.   We think, the judgment of the District Court is erroneous, and that the errors assigned by the appellant are well taken.

*First.* There was no sufficient evidence of any alteration of the note.   Nothing appears upon the face of the note, to originate a suspicion, except the words written in blue ink, " *ten per cent.*"   There is no erasure or interlineation, to insert these words, but they appear in their natural order and position, as if written when the remainder of the note was written, or inserted in a space left to receive them.   It would be carrying the doctrine of presumption very far, indeed, to hold, that because these words appear written with ink of a somewhat different color, they throw such suspicion on the instrument, as to require that the party claiming under it, should explain it away, before he can recover.   Admitting the rule to be, that as to negotiable instruments, the burden is upon the party claiming under it, to show that any obvious and material alterations had been lawfully made, we find no authority in America or England, which holds, that if words

in the body of a note, appear to be written in different colored ink from the remainder of the note, the fact is of itself, sufficient to establish an alteration, which the party must explain before he can recover. An interlineation, particularly if accompanied by an erasure, in different handwriting, and different colored ink from that of the body of the instrument, and the signature of the maker, has been held to throw suspicion on it, as showing an alteration ; and the burden of explanation is upon the party offering it. *Wilde* v. *Ormsby*, 6 Cushing, 314. This is. as far, we think, as any of the. American authorities have gone. The note sued on in this instance, being produced for inspection in this court, we are of opinion, that there is nothing upon its face, requiring such explanation by the plaintiff, in order to maintain his action.

Nor do we think that the case for the defendant, is in any essential degree strengthened by reference to, and inspection of, the mortgage given to secure the payment of the notes. If the note sued on had been described therein, as bearing " *six per cent.*" interest, we should have been disposed to regard it with suspicion. But it will be perceived, that the mortgage does not purport to set out or describe the notes with accuracy and precision. It gives their dates, amounts, and maturity, each sum "to bear interest from this date." This would mean *six per cent.* interest, of course, if no other rate were agreed upon and expressed in the note. But the words, "to bear interest from date," may apply to a note bearing a greater rate of interest, and do not, *ex vi termine*, and necessarily, mean to refer to and describe a note bearing *six per cent.* interest only. It will also be perceived, that there are other particulars in which the mortgage does not purport to set forth the note according to its very tenor. It does not describe the note as drawn to be signed by more than one person ; nor as drawn payable to Merritt, or be rer. The note reads: " We, *or either* of us, promise to pay *Jos. H. Merritt, or bearer.*" Now, would it not be quite as reasonable to argue from these circumstances, that there had been an alteration of the note ?

Jones v. Ireland.

*Secondly.* We think, that whether there had been such an alteration of the note or not, is a question of fact for the jury, and not for the court. The defendant could not, by demurring to the evidence, withdraw this question from the jury, and submit its decision to the court. The facts must be first ascertained and found, and admitted on the record, before the party can demur to the evidence. By demurring, he not only admits the truth of the facts found, but he admits every fact and every conclusion in favor of the other party, which the evidence conduces to prove, or which the jury might have inferred from it in his favor. Without such admission, the weight, as well as the relevancy of the testimony, would be referred to the court, which is not the object of the demurrer to evidence—such object being to obtain the opinion of the court upon the sufficiency of the evidence in law, to maintain the issue in fact. Gould on Pleading, 480. But the office of the jury, is superseded only by admitting on the record, all the facts which they could find from the evidence in favor of the plaintiff, and denying their sufficiency in law to entitle him to recover. Ib. 482. Admitting, then, every fact and every conclusion in favor of the plaintiff, which the evidence offered by him conduced to prove, and every fact which the jury might have inferred from it in his favor—for such is the effect of the demurrer—we do not see how there should have been judgment against the plaintiff, and in favor of the defendant. The fact found is not that there had been an alteration of the note, or that it was different from its original form. This would not be the legitimate inference which the jury might draw from the evidence in favor of the plaintiff. The issue of fact imposed upon the plaintiff the duty of proving that the note was the deed of the defendant. We can give no other consequence to the demurrer, than an admission on the record of this fact. The plaintiff had the right to require it, before joining in demurrer. He does not thereby admit anything against his own case, but he has the right to require an admission on the record, of the truth of all the facts that the evidence offered by him, tended to prove, or that the jury might infer from it in his favor. The infer-

ence that he had the right to require to be made in his favor, was that the note was without alteration.

We do not think we are going too far, in suggesting that in our opinion, this was not a case in which a demurrer to evidence, was the proper mode of proceeding. It is rather unusual in our practice, and is allowable only in the discretion of the court. An offer to demur, is not *stricti juris*. If there be no colorable cause of demurrer, the court should not allow it. The plaintiff relied on the note and mortgage, as sufficient to establish the affirmative of the issue. Confessing this evidence to be true, by the demurrer, is not the confession of any fact, on which the proper question of law can arise, and ought to be presented for the adjudication of the court. The plaintiff does not admit the alteration of the note, but seeks by giving it in evidence and presenting it for inspection, to raise a presumption in its favor, and to rebut any suspicion of its alteration. He has the right to require that this presumption be admitted on the record, before he joins in demurrer. Without it, he is not bound so to join; and if he does, the court can pronounce no judgment on the demurrer. Gould on Pleading, 487.

Neither is the fact of the alteration found. This could only be found by the jury. The court had no right to infer it. The execution of the note being denied under oath, the plaintiff was bound to prove the execution. The note was, however, read to the jury, subject to the ruling of the court, that the words "*ten per cent.*" should be explained by the plaintiff, before he could recover. On the usual proof of the execution of the instrument, it should, without reference to any suspicion of its alteration, have been admitted in evidence, leaving all testimony in relation to such alleged alteration to be given to the jury. The whole inquiry, whether there had been an alteration, and if so, whether in fraud of the defendant or otherwise, to be determined by the appearance of the instrument itself, or from that and other evidence in the case, should have been left for the jury. The whole is a matter of fact, and they must determine it, from the evidence before them. This is the rule established by the Su-

preme Court of Vermont, in *Beaman* v. *Russell*, 20 Vermont, 215. And is more in accordance with our ideas of right, than any other decision coming under our notice, whether English or American. It is there said : " It will doubtless be the duty of the court, to give the jury proper instructions upon any given state of facts. But any instructions in regard to the burden of proof, should be founded upon a supposed finding of the jury in regard to the alteration, rather than upon any assumption of the court in regard to it, because the character of the alteration, whether suspicious or otherwise, is matter of fact for the jury, and not of law for the court." So in *Gooch* v. *Bryant*, 13 Maine, 386, the question was, when the alteration was made. The court held, that it was not of itself proof that it was done after signature. It might have been before. To hold that the presumption of law was, that the alteration was *prima facie* evidence that it was done after, would be a harsh construction. It would be exposing the holder to a conviction of forgery, unless he could prove that it was done before the signature. It would be to establish guilt by a rule of law, when there would be at least, an equal probability of innocence. Such cannot be the law. It is a question of evidence to be submitted to the jury. 13 Maine, 386. See also, *Clark* v. *Rogers*, 2 Greenleaf, 147 ; *Cumberland Bank* v. *Hall*, 1 Halsted, 215 ; *Baily* v. *Taylor*, 11 Conn. 531. Such is the authority of Greenleaf, § 564 : " If any ground of suspicion is apparent on the face of the instrument, the law presumes nothing, but leaves the question of the time when it was done, as well as of the person by whom, and the intent with which the alteration was made, as matters of fact to be ultimately found by the jury, upon proof to be adduced by the party offering the instrument in evidence." We conclude, therefore, that the court erred in sustaining the demurrer to the evidence, and in rendering judgment thereon for defendant.

The judgment will be reversed and set aside, and a *venire de novo* awarded.