JAMES A. HARRIS, APPELLANT, VS. THE BANK OF JACKSONVILLE AND MAXFIELD & CO., APPELLEES.

1. A party to an action cannot be examined as a witness in his own behalf concerning "a transaction or communication" had with a party deceased at the time of such examination, against the "assignee" of the deceased person, although one jointly interested with and represented by the deceased, yet not in fact participating in the transaction, still survive, unless such assignee be examined in his own behalf as to such transaction, or the testimony of the deceased person concerning it be given in evidence.

2. H. P. R. & Bro., drew a bill of exchange upon J. A. H., addressed to J. A. H., Citra, Florida, and payable to their own order. J. A. H. accepted it. The negotiations as to and resulting in the acceptance were between J. A. H. and C. F. R., a member of the partnership of H. P. R. & Bro., the other member of the firm, H. P. R., not in fact participating therein. H. P. R. & Bro. endorsed the bill before its maturity to the Bank of Jacksonville for value and without notice, and after this C. F. R. died. In a suit in equity subsequently instituted by J. A. H., to compel the surrender of a draft which had been given by him to the bank in exchange for such bill of exchange, upon the ground that his acceptance, which he claimed was simply, "Accepted, James A. Harris," had been materially altered by writing over it and across the face of the bill the words "Payable at the Metropolitan National Bank, New York City," Harris being under examination as a witness in his own behalf, offered to testify that the words "Payable, &c.," were added after he had

accepted it and without his authority : *Held,* That though C. F. R. was not solely interested, but acted in behalf of a partner as well as himself, yet the acceptance was a transaction between J. A. H. and a person "deceased" at the time of such examination, as to the alteration of which J. A. H. could not, under the act of 1874, sec. 24, page 518, McC.'s Dig., testify in his own behalf against the bank.

3. If the acceptor of a bill of exchange allege affirmatively that it has been altered materially and without his authority since he accepted it, the burden is upon him to prove the alleged alteration. The production of the bill will, if the alteration is apparent upon its face, make a *prima facie* case for the acceptor and throw the burden upon the holder to show that the alteration was made before it was accepted. The party producing and claiming under the paper must explain every apparent material alteration and remove every suspicion thereof, of which there is evidence on its face, before he can recover. If there is nothing upon the face of the bill to indicate or put one on notice as to the alteration, the acceptor must prove it by extraneous testimony.

4. The bill of exchange in question was drawn on a printed blank form, all the blanks being filled in the handwriting of C. F. R., in whose handwriting were also the words "payable at Metropolitan National Bank, New York City." The words, "Accepted, Jas. A. Harris," in Harris' handwriting, were in red ink, and the other writing on the paper in black ink : *Held,* That there was apparent, upon the face of the bill of exchange, no alteration, nor any presumptive evidence or reasonble ground for suspicion thereof.

Appeal from the Circuit Court for Duval county.

The appellant, Harris, filed his bill in the Circuit Court for Duval county in chancery, praying that a certain draft, dated July 23, 1884, drawn by said Harris, to his order, on Maxfield & Co., for five thousand dollars, payable six months after date, endorsed by Harris to the Bank of Jacksonville, accepted by Maxfield & Co., and held by said bank, should be delivered up and cancelled ; and that an action at law by said Bank of Jacksonville against Maxfield & Co., on said draft, should be enjoined. The grounds for relief al-

## JUNE TERM, 1886. 503

Harris v. The Bank of Jacksonville et al.—Statement of Case.

leged in the bill are, in substance, that said draft was obtained by the Bank of Jacksonville from Harris for the surrender to him of a draft of five thousand dollars, drawn on and directed to said Harris at Citra, Florida, by H. P. Robinson & Bro., dated February 20, 1884, payable five months after date, accepted by Harris, and sold and endorsed by H. P. Robinson & Bro. to said bank; that said last mentioned draft was materially altered after Harris' acceptance thereof, and without his knowledge, consent or ratification, by adding thereto the words " payable at Metropolitan National Bank, New York City ;" that at the time said bank discounted said draft said alteration was made, with the knowledge and by the procurement of said bank ; that said Harris was a mere accommodation acceptor of said draft ; that H. P. Robinson & Bro. are insolvent; that, when said Harris took up said last mentioned draft and gave to said bank the draft on Maxfield & Co., he was ignorant of the said alteration which had been made in the draft of February 20, 1884.

The Bank of Jacksonville answered said bill denying, upon information and belief, that there had been any alteration of said draft as accepted by Harris, and denying positively that Harris was an accommodation acceptor thereof, and that any alteration was made in said draft by the procurement or with the knowledge of said bank, and stating that said bank bought said draft in good faith, before maturity, for its full face value, less the usual discount. There was a general replication, testimony was taken, and, upon the hearing the Circuit Judge dismissed the bill; from which decree the appellant took his appeal to this court. The other facts of the case are sufficiently stated in the opinion.

*Fleming & Daniel* for Appellant.

*A. W. Cockrell & Son* for Bank of Jacksonville.

*J. M. Barrs* for Maxfield & Co.

MR. JUSTICE RANEY delivered the opinion of the court:

The acceptance by appellant of the bill of exchange of February 20, 1884, though in law a transaction between him and both members of the firm of H. P. Robinson & Bro., was in fact conducted between him and the deceased member, C. F. Robinson, who, though acting for his firm, was the only one of them who actually participated in the negotiation and consummation of the transaction with the appellant.

The act of 1874, chapter 1983, §24, p. 518, of McClellan's Digest, after declaring that no person shall be excluded as a witness by reason of his interest in the event of the action, or because he is party thereto, enacts in the form of a proviso, " that no party to such action, or person interested in the event thereof, nor any person from, through or under whom any such party or interested person derives any interest or title by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and the person, at the time of such examination, deceased * * against the executor, * * * assignee * · * or survivor of such deceased person, but this prohibition shall not extend to any transaction or communication as to which any such * * * assignee * * * shall be examined on his own behalf, or as to which the testimony of such deceased person shall be given in evidence."

It is claimed by appellant, who was complainant in the lower court, that at the time he accepted the bill of exchange the words, " Payable at Metropolitan Nat. Bank, New York City," which now appear immediately above

what he charged to be in fact his acceptance on the face of the paper, were not on it, but that they have been added since, and that the acceptance made by him was in the following language: "Accepted, James A. Harris," and none other. As the bill of exchange now stands, the acceptance is in the language quoted in this paragraph.

The acceptance of this paper was, barring for the present the effect of the fact that C. F. Robinson was acting in behalf not only of himself, but also of a partner who is still living, (a point to be considered hereafter) a " transaction " with a deceased person, within the meaning of the statute, and it seems clear that Harris is excluded from testifying as to any addition to or alteration of the acceptance having been made. The acceptance is the transaction, and to testify as to what were its real terms is unquestionably testifying as to the transaction between Harris and a person who was dead when Harris was examined as a witness, and as to which no one else in fact participated in transacting. In Ranbitscheck vs. Blank, 80 N. Y., 478, where there was an exchange of lands between Herdfelder and Blank, Blank gave Herdfelder a check for the amount of the difference in value, and Herdfelder gave Blank a receipt, and Herdfelder assigned the check to Ranbitscheck, and died prior to the trial, it was held that Blank was incompetent to testify on the trial as to the transaction between him and Herdfelder. In Brighton vs. Bogardus, Admr., 35 Hun., 198, an action brought to recover the value of services rendered by the plaintiff, a female, to defendant's intestate prior to February 7, 1882, the plea was payment. Upon the trial before the referee the defendant produced a receipt executed by the plaintiff, by which she acknowledged the receipt of $50 from the intestate *in full of all demands of whatever nature or kind up to date, February 11, 1882,* and proved that she had delivered it to the deceased. The plaintiff was then

allowed, against the defendant's objection, to testify that the words italicised had been added since she signed and delivered it to the intestate, and were not there when she signed it, but the Supreme Court on appeal held the testimony to be inadmissible, as it related to a personal transaction between the witness and the deceased. The execution and delivery by the plaintiff to the deceased of the receipt were declared to be clearly a personal transaction between herself and the deceased. In Foster vs. Collner *et al.*, 107 Penn. St., 305, the decision was that where a note in suit is in the same condition at the trial as at the death of the assignor, the assignee cannot testify that it is now partly in pencil. Smith vs. Bennett, 35 N. J. Eq., 314 ; Louis vs. Easton, 50 Ala., 470 ; Peace vs. Barnett, 30 Hun., 525.

There can be no doubt that an attempt to show by Harris that the alleged addition was made to the acceptance, would be within the prohibition of the statute if C. F. Robinson, with whom he actually dealt, had been solely interested, and acting for himself only, on his side of the transaction. If he would be a competent witness to testify as to the terms of the acceptance, and, consequently, an alteration thereof in one particular, he would be competent to do so as to a change in any other particular, to make it conditional, or even to destroy its effect altogether.

Does or should the mere fact that at the time of this transaction there was another person jointly interested with C. F. Robinson, and jointly bound by his acts, exempt Harris from the exclusion which the statute places upon him in a case where no third person would be so interested in or bound by the dealings of Robinson ? The theory of the proviso to the statute is that where one of two persons whose mouths have been opened by its general provision to testify as to a transaction between them has been taken away by death, the mouth of the survivor should

be closed also as to such transaction against the executor or other representative of the deceased person, or his assignee or other person claiming through him, until or unless the executor, assignee or other person representing or claiming under such deceased person shall himself testify as to such transaction, or having preserved the testimony of such deceased person as to it shall use it in evidence. To the living party to the transaction it prescribes perpetual silence as against the representatives of the dead, and his assignee or others claiming under him, unless such representative or assignee or other claiming under him shall himself elect to testify as to such transaction or to introduce the testimony of the deceased as to it. What the living knows or would testify is excluded because what the dead would testify if living cannot be or is not given in evidence; or because his representative or assignee is not himself so acquainted with the facts of it as to encourage him to go upon the stand; this is the underlying principle of the exclusion : as one is not confronted by the other the former is restrained from saying anything. The temptation to misrepresentation and perjury in such cases, however superior many might prove to it, was doubtless thought by the Legislature to be too great to permit the survivor to speak; the interest of those claiming under the deceased, if not the ordinary principles of fairness, was thought to demand the protection of such silence unless and until they should themselves elect to testify as to the transaction, or to introduce the deceased's testimony as to it. In case the executor or assignee testifies as to the transaction—tells under oath what he may know about it—or in case he introduces the evidence of the deceased as to it, his doing so is deemed by the statute a sufficient reason for admitting the survivor of the parties to such transaction to testify; because in the one case such survivor would encounter what

such executor or assignee may know of the transaction, and and in the other case he is confronted by the statements of the deceased as to the facts and circumstances of the same transaction which he will detail his own account of; and in both cases such executor or assignee, or other person of a like class, exercises his privilege with a full knowledge of its letting in the survivor to testify and of even the possible consequence thereof.

In no way does the fact that a third person, having no actual participation in the transaction, has a joint interest with the deceased person supply the same or like guarantees of the attainment of the truth, or of the protection of those claiming under the deceased, that the exceptions to the excluding terms of the proviso gives. Such joint interest has not been made an exception to the proviso, though others were made. It would be hard to conceive a sound reason why the survivor should testify in his own behalf as to a transaction conducted by him and the deceased alone, simply because a third person was interested with the deceased party, and yet be excluded from testifying as to another transaction conducted in the same manner, but in which he and the deceased alone were interested. The fact of such joint interest has, to our minds, in itself, no effect upon the question whatever; and, upon principle, we think Harris was incompetent to testify, and was properly excluded, nor are we without authority upon the subject.

In Hunter vs. Herrick, 26 Hun., 272, Hunter sued Herrick, executor of Carlton W. Herrick, deceased, who, with one Vanderburgh and another, had been partners under the style of L. Vanderburgh & Co., and had made the promissory note sued on. Vanderburgh was called as a witness by plaintiff and interrogated as to a conversation between himself and defendant's testator in reference to the forma-

tion of the alleged partnership, and it was objected to as being a personal transaction between Vanderburgh and the deceased. The Supreme Court held it was such, and that Vanderburgh, being "interested in the event of the action," could not testify. In Hildebrandt vs. Crawford, surviving partner, 65 N. Y., 107, where it was claimed that Hildebrandt's conversation was with Ridder, a deceased partner of Crawford, but was decided in fact not to be so, it was said : " If it was clearly shown that the conversation pointed at was between Ridder and Hildebrandt in any proper sense, there might be force in the objection " that it was a personal transaction and inadmissible.

In McWhorter vs. Sell, 66 Ga., 139, where A. sold to B. his interest in a note of C., payable to the firm of A. & B., and then died, it was held that C. was not a competent witness in a suit by B. to prove payment to A. See U. S. Digest, N. S., Vol. 13, page 946, §41.

The presence of disinterested parties at the time of the transaction, as to which it has been sought to have the survivor testify, is shown by the following cases not to save him from the excluding effect of the proviso: Brague vs. Lord, 67 N. Y., 495 ; Kraushaar vs. Meyer, 72 N. Y., 602.

II. It is contended by appellant that the bill of exchange bears upon its face presumptive evidence of the alleged alteration, without the authority of Harris. As drawn, directed to "James A. Harris, Citra, Florida," he says it was payable at that place, yet the writing across the face made it payable at a different place, and this is in a different handwriting from that of Harris.

The cases cited in support of this point are Angle vs. N. W. Mutual Insurance Co., 2 Otto, 330, and Desbrow vs. Weatherley, 6 Car. & P., 758.

In the former case it was held that where a party to a negotiable instrument intrusts it to another for use as such,

with blanks not filled, it carries on its face an implied authority to complete it by filling them, but not to vary or alter its material terms by erasing what is written or printed as a part thereof, nor to pervert its scope or meaning by filling the blanks with stipulations repugnant to what was plainly and clearly expressed in the instrument; and also that the material alteration of a written instrument, without authority, renders it void. The printed form signed in this case in blank by the plaintiff seems to have been as follows: "Pay to ———— ——— dollars on account of ——— in drafts to the order of ———." He signed his name immediately after and close to the last word. The party to whom it was delivered so signed, erased the words " drafts to the order of," and inserted preceding the erasure the words " current funds." It was held that though the delivery authorized the filling up the blanks in any manner consistent with the terms of the form, yet it did not permit the erasure and change as to the mode of payment, as the language " in drafts to the order of," was an expression of the signer's will and direction in the premises, and wholly inconsistent with a payment in funds. As to whether the order in this case bore upon its face the marks of its infirmity, it is said: " Actual notice in such a case is not required, even in suits founded upon negotiable securities where the evidence of its infirmity consists of matter apparent upon its face; nor is any different or stricter rule applicable in cases like the present, it appearing that the printed words, though erased so as to be inoperative, were still entirely legible, even to the casual reader, and that the words ' current funds ' inserted before the erased word ' drafts ' were plainly repugnant to the erased words ' drafts to the order of,' which followed them in the same connection."

Desbrow vs. Weatherly, was a case at *nisi prius* before

Tindale, C. J.    The bill of  exchange sued on  was drawn
by  Williamson on the defendant, who accepted it and  Wil-
liamson endorsed it to the plaintiff.    *Under* the words "ac-
cepted, H. O. Weatherly," were written, but not in the de-
fendant's  hand-writing,  the  words,  "Payable at  Messrs.
Ashleds & Sons, 135 Regent Street."  The bill appeared upon
its face to have been changed from "five" to "six" months
as to time of  payment.    Williamson having been called as
a witness by the plaintiff, swore that he drew the bill him-
self, and that defendant accepted it for his accommodation
and  handed  it  over to plaintiff and  received  £350 from
him, and that the  bill had not been altered since it was ac-
cepted.    With  respect  to  the  words  " Payable,  &c.,"
he    said    that    he    could · not    state    whether  they
were  written  before  or  after  the  defendant  accepted
the  bill,  but  he  thought  they  were  written  on  the
same  day;  yet  he  would  not  swear  that  they  were  not
written  on  a  subsequent  day.    The  Chief-Justice,  after
speaking  of  the  alteration  of  the  time  of  payment, said:
" But there is another, which on the testimony of Mr. Wil-
liamson was made *after*  the acceptance, though he will not
say exactly when  it  was  done.    I  allude  to  the  words
' Payable, &c.'   This being an alteration after the accept-
ance, or at the  time, it  is  incumbent on the plaintiff to
show that it was made with the consent of the party accept-
ing, &c."

In the former case the evidence of alteration and erasures
on the face of the instrument were enough to put the party
upon  inquiry;  in  the  latter,  it  is  plain  that  the  Chief-
Justice understood the  testimony of Williamson as mean-
ing or establishing that the words " Payable, &c.," had been
added after the signing of  the acceptance, but whether im-
mediately following, or how long after, was uncertain.   Be-
sides the peculiar position of  the  questioned words, there

was extraneous evidence of an alteration having been made.

Where the acceptor, sued upon a bill of exchange, alleges in his plea that it has been altered materially and without his authority since he accepted it, the burden is upon him to prove the particular alteration set up in his plea; and such is unquestionably the rule where, in a case like the present, the acceptor becomes an actor in a court of equity for the purpose of obtaining a decree for the cancellation or surrender of the acceptance on the ground of such alteration, and the answer of the holder of it at least puts in issue the alteration, though it may be not in such form as to be evidence and require the testimony of two witnesses, or of one and a corroborating circumstance, to overcome it. The production of the bill of exchange in evidence will, if the alteration is apparent upon its face, make a *prima facie* case for the acceptor, and throw the burden upon the holder to show that it was made before it was accepted, or, if since, by the acceptor's authority. If there is nothing upon the face of the instrument to indicate an alteration, then the allegations of the acceptor must be proved by extraneous testimony. The party producing and claiming under the paper is bound to explain every *apparent and material* alteration; if it appears to have been altered he must explain this appearance; if there is apparent upon its face any mark of or ground for suspicion he must remove the suspicion; but if, on the other hand, however material in fact the alteration of the bill may be, there is, upon its face, no evidence or mark raising a suspicion thereof, the holder is not called upon to make an explanation on the mere production of the bill, or to introduce any testimony until the alteration has been shown by sufficient evidence outside of the paper. In Meikel vs. State Savings Institution, 36 Ind., 355, it was claimed that the words " at the First National

Bank of Indianapolis " had been inserted in the body of the note since defendant had signed and delivered, but there was upon its face no indication of any alteration, and it was held that where a defendant alleges an alteration of the note after it has been signed, and there is no indication of such alteration on its face, the burden of the issue is upon the defendant. 1 Greenleaf on Evidence, 364, and notes; Davis vs. Jenny, 1 Met., 221; Wilde vs. Armsby, 6 Cush., 314; Chism vs. Toomer, 27 Ark., 108; Elbert vs. McClelland, 8 Bush, 577; 2 Daniel on Negotiable Instruments, §1417, et seq.; Byles on Bills, 492; Hills vs. Bamer, 11 N. H., 395.

In the case at bar it is admitted that C. F. Robinson, the deceased partner, had the management of the financial business of the firm, and that the draft in question and another of the same date and amount, but payable in six months, are in his handwriting, except the printed parts thereof, and excepting the words, " Accepted, James A. Harris," which are in appellant's handwriting. It is also admitted that the words in the handwriting of Harris are written in red ink. What evidence of any alteration or mark of suspicion thereof is there upon the face of this bill? There is no interlineation, no erasure, no change or correction. The words " Payable at Metropolitan Nat. Bank, New York City," written across the face of the bill, are in the same handwriting, that of C. F. Robinson, as the other written parts of the bill, except the words " Accepted, James A. Harris," which are right under them, and in the handwriting of Harris. If the above words constituting the alleged alteration were in the handwriting of a third party it would be a suspicious circumstance, but being in that of the same party who wrote the bill, and standing immediately over the writing and signature of Harris, we are unable to see

33

anything in the appearance of the bill that indicates that it has been altered, or that, in the light of authority, can be held to be an apparent alteration. In all the cases where the alteration has been held apparent, which diligent search upon our own part and the industry of learned and zealous counsel has produced, there has been an interlineation, erasure, difference of handwriting, change of figures or words, or some irregularity calculated to arouse suspicion, on the face of the paper. Here we have nothing of the kind; not even that of the questioned words being below the signature, as was the fact in Desbrow vs. Weatherley, and which, on account of its irregularity, may be a sufficient circumstance to put the holder or person taking the paper upon inquiry; but the words objected to are above his signature, and in such case the presumption is that they are adopted by his signature, or, in other words, legally his act, unless there is something in their appearance to indicate the contrary. Davis vs. Jenny, 1 Met., 221.

In Simpson vs. Strickland, 9 Penn. St., 186, the place of payment was in a different handwriting from the body of the bill, which had been written by the defendant, and it was held that there was a presumption of an alteration, and in the other cases cited in that opinion there are other similar suspicious circumstances. In Jones vs. Ireland, 4 Iowa, 63, the words "ten per cent." were in the same handwriting as the body of the note, but in blue ink, whereas the body of the note and the signture were in black ink. The defendant, the maker of the note, had signed, but had not written any other part of it. It was held that no suspicion requiring the plaintiff to show that the words in blue ink were made by authority of the maker was cast upon the note. In Wilson vs. Harris, 35 Iowa, 507, a portion of the endorsement signed by the defendant was in a different ink and handwriting from the remainder, but this

was held not to afford such a prima facie evidence of a fraudulent alteration as to require the plaintiff to explain them.

There is nothing to justify us in holding that the questioned words were not written before Harris accepted the bill; nor is there anything extraordinary or suspicious in the form of the bill. The fact that Harris wrote in red ink is not evidence of any subsequent alteration of the instrument.

III. The testimony of the appellant as to the alleged alteration of the acceptance being inadmissible, and there being upon the face of the draft no evidence of such alteration, and as there is in the record no other testimony to support the allegation of such alteration, the decree must be affirmed, and it is unnecessary to consider any other questions than those disposed of above.

The decree is affirmed.