ROBERT H. MUNROE, AARON HOGAN, ALICE BROWN, REUBEN HOGAN AND DELPHA PROCTOR, *Appellants*, v. FANNIE W. CARROLL, AS EXECUTRIX OF CHARLES T. CARROLL, DECEASED, AND J. A. McCLELLAN, *Appellee*.

Opinion Filed July 5, 1920.

1. In a suit in equity against the representative of a deceased person to declare an instrument in the form of a deed of conveyance absolute to be a mortgage, the complainants are not competent witnesses in said suit to testify as to any transactions or communications occurring between them and the said deceased person.

2. Section 1505, General Statutes of Florida, 1906, relating to the competency of witnesses as affected by interests is an enlargement and not a restricting of the common law rule and removed the common law disability of a witness arising from interest in the event of litigation except in those cases when one of the parties to the transaction or communication was at the time of the examination dead or insane.

3. Where under the provisions of Section 2494, General Statutes of Florida, 1906, complainants in a suit against the representative of a deceased person seek to show that a deed absolute in form executed by them was in fact a mortgage the testimony of the complainants concerning their relations with the grantee during his life time, involving communications and transactions with him by which they seek to establish the character of the instrument as a mortgage is not admissible under any exception at common law to the rule prohibiting a party in interest from testifying in a cause.

An Appeal from the Circuit Court for Jefferson County; E. C. Love, Judge.

Decree affirmed.

*W. C. Hodges* and *Fred H. Davis,* for Appellants;

*T. T. Turnbull* and *S. D. Clarke,* for Appellee.

ELLIS, J.—The appellants who were complainants below exhibited their bill in the Circuit Court for Jefferson County against Fannie W. Carroll as administratrix of the estate of Charles T. Carroll, deceased, and J. A. McClellan and prayed that a certain instrument in writing appearing on its face to be a deed of conveyance executed by Robert Munroe, Aaron Hogan, and Henry Hogan in December, 1894, to Charles T. Carroll be declared and decreed to be a mortgage and that an account be taken of the amount due thereunder; that complainants be permitted to pay it, and that the instrument be cancelled of record. That in the meantime the defendants and their agents be restrained from entering upon the premises described in the alleged mortgage or in any wise interfering with the complainants' possession and use of the lands.

The bill alleged in substance that Munroe and the two Hogans were the owners of the land described in the deed, acquiring the same by purchase in January, 1882, since which time they, and since the death of Henry Hogan, his heirs, Alice Brown, Delpha Proctor and Reuben Hogan, together with Munroe and Aaron Hogan, held and maintained open and exclusive possession of the lands. That Charles T. Carroll in the year 1882, and for some years afterwards, until his death, was a merchant in the town of Monticello, and that Munroe and the Hogans traded on account with Carroll for sundry supplies and merchandise for the home and farm, and their trading extended through a period of many years, during which time periodically the Hogans and Munroe

would pay to Mr. Carroll the money arising from the
sale of the farm products; that they paid on their
account cash, labor and farm produce an amount equal
or nearly so to the price and value of the goods and
merchandise sold to them.

That in December, 1894, Mr. Carroll claimed that the
Hogans and Munroe owed him on the account the sum
of $1,218.45; that they were not satisfied that such sum
was due, but relied upon the statement of Mr. Carroll,
and at his request executed the written instrument men-
tioned as security for the payment of the debt; that he
explained to them at the time that it was a trust deed
or mortgage to secure the sum due on their account;
that the instrument, although a deed of conveyance on
its face, a fact which they did not discover until after
the death of Mr. Carroll in 1903, was then and is now
a mortgage to secure the payment of the debt mentioned.

That the complainants continued their trading with
Mr. Carroll until his death, occupied and cultivated the
land, paid taxes thereon and exercised control and own-
ership over it; that the amount of the debt for which the
mortgage was given has been paid; that since the death
of Mr. Carroll the administratrix of his estate denies
that the deed is a mortgage and insists that it is an
absolute conveyance of the land and was never intended
as and for a security for the payment of a debt; that she
refuses to come to any accounting with the complainants
as to the transactions between them and Mr. Carroll;
that J. A. McClellan claims to be lessee of the premises
from the defendant Fannie W. Carroll and has sought
by intimidation, abuse and profane and wicked language
to terrorize the complainants and compel them to sur-
render possession of the premises to him. That he has

forcibly taken possession of part of the premises, assaulted the complainants with deadly weapons, and maintains possession of a portion of the lands by force, intimidation and brutality.

The defendant Fannie T. Carroll answered the bill, denying the allegations of ownership of the land by the complainants, that the deed of conveyance was given as security for a debt, that she refused an accounting to them, and averred that they were now largely indebted to the estate of Mr. Carroll and had made no effort to pay the same.

There was no answer by the defendant McClellan.

Testimony was taken before a Special Examiner and the court upon final hearing dismissed the bill of complaint because the evidence failed to support its allegations. This result was reached by striking out that part of the testimony of Robert H. Munroe and Aaron Hogan relating to the transactions and communications alleged to have been conducted by them with Charles T. Carroll, who was deceased at the time of the institution of the suit, concerning the nature of the deed from Munroe and the Hogans to the said Charles T. Carroll. From this decree the complainants appealed.

There are four assignments of error, but all involve the one question of the correctness of the court's ruling in eliminating the testimony of Munroe and Hogan relating to the transactions between them and Mr. Carroll, who was at the time deceased, concerning the nature of the deed which was in form a conveyance of the land.

The language of that portion of the decree regarding the testimony of Munroe and Hogan relating to transactions and communications with Mr. Carroll during his

life time concerning the nature of the deed is sufficiently
broad to include all testimony as to business dealings
with him; the purchase of supplies; the running of
accounts; the payments on same, statements of accounts
rendered by Mr. Carroll; payments to him of sums of
money on account of taxes on the land after the date of
the deed; payments in turn by Mr. Carroll to the tax
collector.   All testimony by Munroe and Hogan as to
the transaction in December, 1894, with Mr. Carroll in
which they executed the written instrument as a mort-
gage to secure the payment of the debt they owed; Mr.
Carroll's statement to them concerning the intention of
the parties and the purpose of the instrument; all testi-
mony as to his purpose or intention in requiring them to
execute the paper and the necessity or reason for it, and
the amount each was to pay to obtain a release.   With
this testimony excluded there was no evidence sufficient
to support the allegations of the bill as to the nature of
the instrument which was alleged to be a mortgage other
than the testimony of the witnesses Munroe and Hogan
as to their purpose and intention in executing the paper
which we do not deem to have been excluded or stricken
by the chancellor.

Section 1505 of the General Statutes, 1906, is as fol-
lows: "No person, in any court, or before any officer
acting judicially, shall be excluded from testifying as a
witness by reason of his interest in the event of the action
or proceeding, or because he is a party thereto; Provided,
however, that no party to such action or proceeding, nor
any person interested in the event thereof, nor any per-
son from, through or under whom any such party, or
interested person, derives any interest or title, by assign-
ment or otherwise, shall be examined as a witness in
regard to any transaction or communication between

such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, heir-at-law, next-of-kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend· to any transaction or communication as to which any such executor, administrator, heir-at-law, next-of-kin, assignee, legatee, devisee, survivor or committeeman shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence."

The correctness of the court's ruling seems to be abundantly sustained by the decisions of this court. See Ley and Zetrouer v. Édwards, 21 Fla. 333; Sanderson's Administrators v. Sanderson, 17 Fla. 820; Tunno and Jessup Co. v. Robert, 16 Fla. 738; Neal v. Gregory, 19 Fla. 356; text 373; Edwards v. Rives, 35 Fla. 89, 17 South. Rep. 416; Holiday v. McKinne, 22 Fla. 153; Adams v. Board of Trustees Internal Imp. Fund, 37 Fla. 266, 20 South. Rep. 266; Withers v. Sandlin, 44 Fla. 253, 32 South. Rep. 829; Patrick v. Kirkland, 53 Fla. 768, 43 South. Rep. 969.

Solicitors for appellants contend, however, that the case at bar presents an exception to the rule prescribed by the statute quoted, and that the testimony of Munroe and Hogan which was stricken by the chancellor was admissible.

It is urged that the quoted statute was an enlargement and not a restriction of the common law rule relating to the competency of witnesses, that the statute removed the common law disability arising from interest in the event of litigation, except in those cases where one ·of the parties to the transaction or communication was at the

time of the examination dead or insane, in which cases the common law disability arising from interest in the litigation is retained, and that the statute in such cases disqualifies those only who were disqualified by the general rule of the common law. In such premise the solicitors for appellants are correct. See Adams v. Board of Trustees Internal Imp. Fund, *supra.*

But did there exist at common law an exception to the rule disqualifying a witness because of interest in the event of litigation and does the stricken testimony of Munroe and Hogan fall within such common law exception to the general rule? If so, their testimony was admissible and should not have been eliminated by the chancellor in arriving at his decision as to the equities of the case.

The facts are that both Munroe and Hogan are parties to the suit and both interested in the event thereof, and that the transactions and communications concerning which they wished to testify were held with a person who at the time of the examination was deceased and that his widow, who is described in the pleadings as the *"executrix* of the estate" and sued in that capacity, is the other party to the suit against whom such testimony was offered.

There is a statute, Section 2494, General Statutes, 1906, which provides that all deeds of conveyances or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor shall be deemed and held mortgages and shall be subject to the same rules of foreclosure and to the

same regulations, restraints and forms as are prescribed in relation to mortgages. The instrument of writing conveying the real estate involved in this case was executed, acknowledged and recorded on the same day, December 18th, 1894. The witnesses were R. E. Sloan and T. M. Puleston, the latter as County Judge took the acknowledgments of the grantors and their wives, and the certification of recordation is signed by D. S. Oakley, as Deputy Clerk of the Circuit Court. None of these were called as witnesses, nor was any reason shown for not doing so. But assuming that these witnesses knew, or any one of them knew the purpose or intention of the parties, grantors and grantee, in executing and accepting the written instrument, and such purpose was merely to secure the payment of money, but they were dead or beyond the jurisdiction of the court, or their evidence for any reason was not obtainable. Their testimony if obtainable and had been produced would have established the character of the instrument as a mortgage. And if it was a mortgage it could never be anything else. See Connor v. Conner, 59 Fla. 467, 52 South. Rep. 727; Elliott v. Conner, 63 Fla. 408, 58 South. Rep. 241.

But it is argued by solicitors for appellants, if Munroe and Hogan cannot testify to the relations that existed between them and Charles T. Carroll at the time of the execution of the instrument and to the transactions and communications between them, they will be deprived of the benefit of the statute, because the statute can have no effect or execution unless the parties interested, in a controversy involving the question of the nature of a written instrument which on its face is a conveyance of lands, are permitted to testify to those transactions and communications between them which establish its character. No other evidence can be reasonably expected

except the testimony of the parties to the instrument who knew better than any other persons what the purpose and intention of the parties were.

It is therefore argued that the case is analogous to those cases at common law where on grounds of public policy it was deemed essential to the purposes of justice, as for instance where the law could have no force but by the evidence of the persons in interest they were permitted to testify. See 1 Greenleaf on Evidence (16th ed.), §348.

Under the common law all persons who were interested in the event of a suit were disqualified from testifying therein whether their antagonists in interest were living or dead. There were two classes of exceptions in which the parties' own oath could be received as competent testimony, according to Mr. Greenleaf in his work on evidence. To enumerate the instances which at common law were considered exceptions to the general rule and in which a party in interest was permitted to testify would be of no value, because they were not analogous to the case at bar in that where the evidence of the party in interest was received at common law the antagonist in interest was living at the time of the oath *in litem* was received. The two classes of cases in which the oath *in litem* was admitted, says Mr. Greenleaf, are first where it has been already proved that the party against whom it is offered has been guilty of some fraud or other tortious and unwarrantable act of intermeddling with the complainant's goods and no other evidence can be had of the amount of damages. This case clearly does not fall in that class. The second class was where on grounds of *public* policy it was deemed essential to the purpose of justice. The first mentioned class of exceptions

rested upon the just odium entertained both in equity and at law against spoliation as well as the fact that in the nature of the subject no proof could otherwise be expected. The second class of exceptions consisted of those in which *public* necessity or expediency required it. It is equally apparent that this case does not fall in that class. The case of United States v. Murphy and Morgan, 16 Peters (U. S.) 203, 10 L. Ed. 937, contains a clear eludication of the principle lying at the foundation of each exception.

Counsel also contend that as the statute declaring written instruments in the form of conveyances to be mortgages when given for the purpose of securing the payment of money was enacted many years before the statute permitting persons in interest to testify was enacted, the legislative purpose was disclosed to permit the parties in interest to testify in a cause involving the question whether a certain conveyance in form was in reality a mortgage. Such purpose is not at all evident, but if it was the latter Act was a renunciation of such purpose so far as witness in interest was concerned who wished to testify as to communications and transactions with a person deceased at the time of the examination in an action against the legal representative of such deceased person.

The proviso of the Act of 1874, Section 1505, General Statutes, 1906, rests upon the ground, as some authorities express it, of the enforced silence of the other interested party to the transaction. It is not deemed fair to permit an interested party to have the benefit of testimony which might appear in a different light, or which might not be given at all if the examination of the adverse party could be secured. See O'Brien v. Weiler,

140 N. Y. 281, 35 N. E. Rep. 587; McCanless v. Reynolds, 74 N. C. 301; Smith v. Moore, 142 N. C. 277, 55 S. E. Rep. 275; Shetler v. Stewart, 133 Iowa 320, 107 N. W. Rep. 310, 110 N. W. Rep. 582; McDonald v. Harris, 131 Ala. 359, 31 South. Rep. 548; Harris v. Bank of Jacksonville, 22 Fla. 501.

The court is not concerned with the wisdom of the rule. The authorities are many and strong which declare that the policy on which the rule rests is fallacious and weak. That there are more honest claims defeated by the rule which destroys the evidence to prove such claims than there would be fictitious claims established if all such enactments were swept away and all persons rendered competent witnesses. However, this may be the, the rule obtains in this State, and has been many times considered by this court and upheld.

The chancellor did not err in eliminating the testimony, so the decree is affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.