R. M. WICKER, *Plaintiff in Error*, vs. WILLIAM F. HAMPTON, HILTON S. HAMPTON and FRED J. HAMPTON, as Executors of the Will of B. F. Hampton, deceased, *Defendants in Error.*

140 So. 202.

Division B.

Opinion file'd March 10, 1932.

Petition for rehearing denied March 29, 1932.

*R. L. Williams* and *George P. Garrett*, for Plaintiff in Error.

*H. S. Hampton, Fred J. Hampton* and *B. F. Jordan*, for Defendant in Error.

DAVIS, J.—On April 25, 1893, James M. Graham and B. F. Hampton made a contract with the State Board of Education of the State of Florida. Under this contract the State Board of Education agreed to sell to Graham and Hampton all of the "school indemnity" lands due and owing to the State of Florida by the United States on the 25th day of April, 1893, under the Act of Congress approved March 3, 1845. This contract included all lands under said Act not yet approved by the Department of

the Interior. By the terms of the agreement the State Board of Education agreed to make to the contracting parties, or to such persons as they might designate, deeds to said lands upon the payment of $1.25 per acre. Subsequently the interest of Graham in the contract was assigned to Hampton, who thenceforth proceeded to carry it out alone.

R. M. Wicker, the plaintiff in error, was plaintiff in the court below. He undertook to deal with Hampton with reference to certain of the "scrip" covered by Hampton's contract in order to secure the means whereby he could acquire title to certain lands which he had undertaken to get through homestead entry by occupation and improvement of same for the period required by law. Prior to this time, Hampton had advertised extensively to the effect that he had for sale land scrip which could be located on any vacant unappropriated public lands of the United States in the State of Florida; that through the use of the scrip he was offering for sale, a homestead entrant could relinquish his homestead and acquire by purchase immediate title to the land from the government by applying such scrip on the public lands which had previously been designated for entry of homestead.

The results of these advertisements of Hampton, and certain negotiations by Wicker, was that a written instrument under seal was executed on March 10, 1923, in favor of Wicker by B. F. Hampton as surviving partner of the firm of Graham & Hampton.

By the terms of his written agreement, Hampton undertook to sell, assign and set over to Wicker all the right, title and interest of whatsoever character he might have in and to certain "Florida School Indemnity Land Bases", which Hampton had acquired under and by virtue of his written contract of 1893 with the State

Board of Education. Under this last mentioned contract the State Board of Education had authorized Hampton to use scrip in acquiring title from the United States to government lands subject to "school indemnity" selection, and had obligated the State to sell such public lands when received, to Graham and Hampton for the sum of $1.25 per acre. Hence Hampton's assignment to Wicker authorized Wicker, or his heirs or assignees, to receive deed to a certain lot of land therein described, when the title to same had been approved to the State of Florida by the Secretary of the Interior of the United States. Hampton guaranteed his "scrip" bases to be good and valid for use in connection with acquiring title to the lot of land described, but reserved the right to substitute a valid base for any part of it which might be declared invalid if he had it available, otherwise to return to Wicker the full amount in cash which had been paid for the invalid base. Wicker was to pay to the State of Florida the sum of $1.25 per acre for each acre of land selected by him, in consideration of which the State Board of Education as contemplated by Hampton's contract with it, was to make a deed to the land to Wicker after it had received title thereto from the United States government.

The written document signed by Hampton was forwarded to Wicker with draft attached. The draft was for the sum of $1377.50, was dated March 10, 1923, which was the same date as the document hereinbefore referred to as having been executed by Hampton, and was paid as the consideration for the delivery of that document by Hampton to Wicker.

Hampton had advertised that he would "attend to" securing title to lands covered by the "scrip" which he was offering for sale. Accordingly, Hampton filed the scrip which he had sold to Wicker on the land which comprised Wicker's homestead entry and undertook to

secure for Wicker the deed to the said land from the State Board of Education to which title had been made by the United States government. Before the deed could be procured, a controversy had arisen between Hampton and the State Board of Education which resulted in litigation wherein Hampton failed in his efforts to compel specific performance of the 1893 contract, which the State Board of Education had undertaken to cancel. The details of this litigation will be found reported in the case of Hampton v. State Board of Education, 90 Fla. 88, 105 Sou. Rep. 323.

The result was that Hampton, whose contract with the State Board of Education had been cancelled, was unable to procure for Wicker a deed to the lands upon which Wicker had applied the scrip sold to him by Hampton, and Wicker having realized nothing out of the transaction, brought a suit at law against Hampton seeking to recover back the consideration of $1477.50 which he had paid him, as well as additional damages for Hampton's alleged failure to deliver a marketable title to real estate.

At a trial in the court below had before the Circuit Judge without a jury, the Circuit Judge granted a motion for directed verdict in favor of Hampton's executors, who had been made parties defendant to the suit after Hampton's death, and final judgment on this verdict was thereafter entered. To this judgment Wicker took writ of error and the case is now before the Court for review on that writ.

The record shows that in January, 1922, Wicker commenced negotiations to buy land scrip which was being advertised for sale by Hampton. These negotiations were brought to a close March 10, 1923, when B. F. Hampton conveyed all interest in certain of the scrip to Wicker for the sum of $1377.50. At the trial Wicker testified that he had paid $1377.50 for the contract dated March

10, 1923. He attempted to testify further that in making this payment he had made the same pursuant to an oral contract by Hampton to procure title for him to land. The court, however, struck this testimony on the ground that all prior negotiations concerning the matter had been merged in the written agreement of March 10, 1923, and that because of this and also because of the fact that Hampton, at the time of the trial was dead, it was improper for for Wicker to be permitted to testify as to any other alleged agreement than that shown by the written contract dated March 10, 1923. There was no error in the ruling striking this testimony. Porter v. Sims, 55 Fla. 504, 46 Sou. Rep. 420; Sparks Enterprises, Inc. v. Christman, 95 Fla. 928, 117 Sou. Rep. 388; Holly Hill Grove & Fruit Co. v. Wicker, 101 Fla. 181, 133 So. Rep. 622.

But assuming that the case was within the exception to the rule that when an assignment is in writing parol evidence cannot be introduced to alter or vary it, except when the rule becomes inapplicable to assignments which from their nature do not purport to state the entire agreement in respect to the subject matter, so that parol evidence may in such cases be introduced to show the entire agreement (McClure v. Century Estates, 96 Fla. 568, 120 Sou. Rep. 4), Wicker's attempted testimony concerning an alleged parol agreement made by him with Hampton, who at the time of the trial was deceased, could not have been received under the rule relating to proof of transactions and communications by interested parties with deceased persons. See Section 2705 R. G. S., 4372 C. G. L.; Munroe v. Carroll, 80 Fla. 206, 86 Sou. Rep. 193.

Turning now to the written contract of March 10, 1923, itself, we find that the only obligation imposed by it on B. F. Hampton was to assign to Wicker the scrip therein referred to, leaving Wicker with the responsibility of getting the land title under it. Assuming that we are

permitted, as contended by plaintiff in error, to construe all the pre-existing written communications between Hampton and Wicker as part of Hampton's undertaking in the premises, although such negotiations and previous communications appear to have been finally merged into the subsequent contract under seal, it appears that Hampton primarily agreed to sell the scrip to Wicker for a specified price and then, as an incident to that transaction, to subsequently perform the personal service required to transform the scrip into title, either as agent for Wicker or as state selecting agent. The language of the advertisement employed in this connection was that Hampton would ''attend to'' securing the title, not that he would unconditionally agree to secure the title so as to make him liable for a failure to obtain it, through no fault on his part.

The proof shows that lands were actually selected by Hampton under the scrip, and were actually certified to the State of Florida, and were actually thereafter conveyed to the State of Florida pursuant to Hampton's efforts. While the act of the State Board of Education in conveying these lands to someone else than Wicker, resulted in Wicker's failing to get what he expected to get, when he purchased Hampton's scrip, there is no showing that such failure resulted in either a breach of Hampton's contract with Wicker, or such failure of consideration for that contract, as would authorize Wicker to recover against Hampton in the action brought against him.

We therefore find no basis for determination of the question as to how far the doctrine of ''*lex non cogit ad impossibilia*'' as applied to discharge of contracts, may be applicable to a situation such as would be here presented if Hampton had, in law, undertaken a positive contractual obligation to procure the title to the land as well as sell the scrip, but had been defeated in his efforts through

the refusal of the State Board of Education to make such title, thereby rendering performance by Hampton of his contractual undertaking impossible.

For an interesting discussion of what has been called the modern doctrine of ''frustration of venture'' as working a discharge of contracts through impossibility of performance, reference is made to the English cases on that subject, the principal one being F. A. Tamplin S. S. Co. v. Anglo-Mexican Petroleum Products Co., 2 L. R. App. Cas., decided in 1916. See also The Isle of Mull, 257 Fed. 798, where the doctrine was followed in an American Court.

While a common count for money had and received lies to recover money paid out under an express contract, the entire consideration of which has failed (Gilmore v. Texas Co., 100 Fla. 169, 129 Sou. Rep. 587), we find no occasion for the application of that doctrine in the case at bar where it appears that the consideration for Hampton's written agreement of March 10, 1923, was the assignment of certain scrip to Wicker and the performance of certain services by Hampton in attempting to give effect to that scrip by the rendition of his personal services in an effort to procure the title for Wicker to lands which the State Board of Education should receive under Hampton's selection. The court below held that there was no positive contractual obligation on Hampton's part to deliver the plaintiff a merchantable fee simple title, and we concur in that holding. Since the predicate for plaintiff's claim lies in his contention to the contrary and that contention, as we have found, has been properly denied by the trial court, it follows that there was no error in directing a verdict and entering judgment for the defendant. The judgment must therefore be affirmed.

Affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

ELLIS AND BROWN, J.J., concur in the opinion and judgment.

BUFORD, C.J., disqualified.