JOHN R. SANDLIN, *Appellant, v.* THE HUNTER COMPANY, A CORPORATION, *Appellee.*

Opinion filed Dec. 15, 1915.

1. While the findings and conclusions of a chancellor, where the evidence is not taken before him, but before a master

or examiner, by reason whereof he is not afforded an opportunity of seeing and hearing the witnesses, are not entitled to the same weight as the verdict of a jury, yet even in that case they should not be disturbed by an appellate court, unless they are clearly shown to be erroneous.

2.  In equity, as well as at law, every presumption is in favor of the correctness of the rulings of the trial judge, and a final decree rendered by him, based largely or solely upon questions of fact, will not be reversed, unless the evidence clearly shows it to be erroneous.

3.  Where the testimony is conflicting but there is evidence to support the finding of the chancellor, the decree will not be reversed on the evidence.

Appeal from Circuit Court, Hamilton County; D. A. Simmons, Judge.

Decree affirmed.

*I. J. McCall* and *C. A. Stephens,* for Appellant;

*R. L. Frink* and *A. B. & C. C. Small,* for Appellee.

SHACKLEFORD, J.—John R. Sandlin filed his bill in · chancery against The Hunter Company, a corporation, in which the complainant alleged that he "is the owner of, and in possession of" certain described lands, "and has been in continuous possession of the above lands for the last past three years, that said lands are not fit for cultivation, that the said lands are chiefly and principally valuable for its timber standing and being and growing thereon."

The complainant further alleged that the defendant, The Hunter Company, had entered upon these lands and had begun to cut and remove the timber therefrom and

that the complainant believed that the defendant, unless restrained, would "continue to cut and fell and remove said timber, until they have cut and removed all of the timber off of and from said land unless stopped, will continue to cut and remove the timber off of and from said lands until all of said timber has been cut and removed off of and from your orator's lands above described, thereby destroying the value of said property, and greatly damaging your orator; that said damage will be irreparable."

The complainant further alleged that the defendant had "no right or authority to cut and remove said timber but that said trespass is wilful and without authority and done in defiance of your orator's request and demand."

The relief sought is "a temporary and permanent injunction."

This bill was sworn to by the complainant and a temporary injunction, or restraining order, was granted, in accordance with the prayer of the bill, without notice to the defendant.

The defendant filed an amended answer in which it denied material allegations of the bill which it was necessary for the complainant to establish in order to entitle him to the relief sought. We copy therefrom the following paragraphs:

"1.    This defendant is without knowledge of the facts and can neither admit or deny that the complainant is the owner of the lots described in the original bill, but this defendant denies that the complainant is in the possession of the said lots and denies that he has been in possession of the same for the past three years, and denies that the complainant is the owner of the timber thereon.

2.    This defendant admits that it, by and through its servants, agents and employees, at the time of the filing of the original bill herein, was engaged in entering upon

and cutting the timber upon certain of said lots and that it was the intention of the defendant to continue to cut and remove the said timber until it had cut and removed all of timber on said lots suitable for commercial purposes, which, this defendant avers, it then and there had and still has the legal and equitable right to do.

3. This defendant denies that paragraph of the complainant's blil which allege that this defendant has no right or authority to cut and remove said timber and that the alleged trespass is wilful and without authority, but, on the contrary thereof, this defendant avers that it has the right and authority to cut and remove the said timber, and that the cutting and removal thereof is not a trespass, wilful or otherwise."

The defendant then proceeds at considerable length to set forth how the defendant derived its right, title, claim and interest to and in the timber growing upon such lands, detailing many facts and circumstances connected therewith, which averments we do not consider it necessary or advisable to copy in this opinion. The answer concludes with the usual general denial found in such a pleading.

A general replication was filed to the answer and a motion was made by the defendant to dissolve the temporary injunction which had previously been granted, which motion was argued by the counsel for the respective parties before the Hon. Daniel A. Simmons, Judge of the Circuit Court of Duval county, the Hon. Mallory F. Horne, Judge of the Third Judicial Circuit, having filed a certificate to the effect that he was disqualified in such cause. Judge Simmons made an order postponing the final hearing of such motion and appointed a special examiner to take the testimony of all parties bearing upon such motion to dissolve, and also required the complain-

ant to file an additional bond. Several witnesses were examined by the defendant before such special examiner and also cross-examined by the complainant, and much documentary evidence was also offered by the defendant and filed, to which numerous objections were interposed by the complainant, upon which the special examiner did not attempt to rule. By agreement of the respective counsel the following order was made: "This cause coming on to be heard by consent of the parties, upon consideration thereof, it is ordered that C. D. Blackwell, Esq., be and he is hereby appointed Special Master in Chancery in this cause, to take and report the testimony and evidence of the respective parties hereto, to the court, together with his findings of law and fact thereon.

It is further ordered that the evidence heretofore taken before the examiner, O. B. Smith, be taken and considered a part of the evidence of the party so offering such before the examiner, and that the said evidence and testimony so offered before the examiner be considered the same as if it were taken and given by the witnesses in person before the Special Master herein, it being the intention of this order to have the evidence and testimony taken before the examiner considered as a part of the evidence of the parties before the Special Examiner, neither party waiving any of their objections heretofore interposed to any part of such testimony."

Quite a volume of testimony was taken by the respective parties before such special master and a large amount of documentary evidence was offered and filed, such special master ruling upon objections and motions interposed by the parties litgant as he was empowered to do.

The special master reported all the evidence so taken

before him and also made his findings of the law and the facts in the cause, which findings are as follows:

"I, C. D. Blackwell, master duly appointed in the above cause to hear the testimony in said cause and to make a finding of the law and the facts in said cause, having heard and considered the evidence offered by the respective parties, and the same having been fully argued by counsel, do report my finding of law and facts as follows:

1. The master overrules all objections and motions to testimony where the ruling is not otherwise stated in the stenographer's report. Exceptions are hereby noted to all adverse rulings, whether entered in the stenographer's report or not.

2. The master doth find and having so found doth report to the court: That each of the parties hereto claim title to the timber on the land involved in this suit from a common source, to-wit: John High.

3. The master doth further find and having so found doth report to the court: That on the 15th day of January, A. D. 1896, under and by virtue of a deed from F. I. McCall the said John High became the owner of the land involved in this suit in fee and under said deed went into actual possession of the said land and remained in possession thereof until the 8th day of December, A. D. 1909, when he made, executed and delivered to John R. Sandlin a deed conveying the said land and that upon the delivery of the said deed to the said Sandlin, the complainant in the above cause, he likewise delivered and yielded to the said Sandlin the possession of the said land.

4. The master doth further find and having so found doth report to the court: That on the 8th day of December, A. D. 1909, the said John R. Sandlin under and by virtue of the said deed from the said High became the owner

of the land involved in this suit with everything appertaining or belonging thereto with all of the rights in and to the timber thereon.

5. That the said John R. Sandlin is the owner and holder of the land involved in this suit by virtue of the said deed from the said High, that he has been in possession of the said land under the said deed for a period of over three years in good faith and that he is still in possession thereof and that his possession has been adverse to the defendant The Hunter Company, together with its assigns for a period of over three years, and that The Hunter Company has had knowledge of such adverse possession ever since the spring of 1913.

6. The master doth further find and having so found doth report to the court: That the defendant, The Hunter Co., at the time of filing the bill in said cause, was on the land cutting the timber thereon, and that without injunction they will continue to cut and remove the timber thereon.

7. The master doth further find and having so found doth report to the court that the said defendant, the said Hunter Co., has not shown any right or authority to enter or cut the said timber.

8. The master doth find and having so found doth report to the court: That the said John High, prior to conveying the said land involved herein to the said Sandlin, complainant, acquired other titles to the timber on said land by reason and by virtue of certain leases as follows: Lease from R. J. Nelson dated November 21st, 1899; lease from Tilden R. Wakely dated December 4th, 1902; lease from Tilden R. Wakely dated May 4th, 1904; and that prior to the said conveyance from the said High to the said Sandlin the said High did transfer and assign

each of the above leases to R. J. & B. F. Camp, but the master doth further find that the transfer and assignments of the said leases and each of them do not transfer and assign the right in and to the timber on the lands described in said leases, and that they are impotent and ineffectual in law as a transfer of said timber rights and are inoperative for that purpose, and that the said R. J. & B. F. Camp acquired no right, title or interest in and to the timber on the lands involved herein by reason of or by virtue of the said transfers and assignments or either of them.

9. The master doth further find and having so found doth report to the court: That the said R. J. & B. F. Camp transferred and assigned their right and interest in and to the timber on the lands involved herein to Dexter Hunter, and the Hunter Co., the defendant herein, has acquired all such right to enter and cut the said timber as was held by the said Dexter Hunter; but the master doth further find that the said R. J. & B. F. Camp had no right, title or interest in and to the said timber and that the said Dexter Hunter acquired no right or interest in and to the same by reason of lease from the said R. J. & B. F. Camp and that likewise, the Hunter Co., defendant, has no right or interest therein.

10. The master doth further find and having so found doth report to the court: That the complainant, John R. Sandlin, at the time he purchased the said land from the said John High had no notice either actual or constructive of the fact that the said John High had transferred and assigned to the said R. J. & B. F. Camp the leases described in paragraph 8 of this report or either of them.

11. The master doth further find and having so found doth report to the court: That the complainant,

John R. Sandlin, was entitled to an injunction temporary and is now entitled to have said temporary injunction made permanent against the defendant, The Hunter Co., enjoining him as the complainant has in and by his bill prayed.

12.    The master doth find and having so found doth report to the court: That the defendant, The Hunter Co., has a right to bring an action at law to try its title in and to the timber involved herein, and the master doth make and report all findings herein without prejudice to the rights of the parties to institute such action at law as they or either of them shall deem proper.

Respectfully submitted,

C. D. Blackwell, Master."

To such findings and report the defendant filed seventeen exceptions and the complainant filed seven exceptions. The cause came on for a final hearing before Judge Simmons, by whom the following final decree was rendered:

"This cause having been submitted to the court by the respective parties to be heard upon exceptions filed by both the complainant and the defendant to the report and findings of C. D. Blackwell, Special Master herein, and the same having been submitted for final hearing, upon the pleadings and the evidence taken herein, and the said cause having been argued by counsel for complainant and for defendant, counsel for the respective parties having also filed written briefs, and the court having duly considered the same, it is considered, ordered and decreed herein as follows:

That Judge Mallory F. Horne, Judge of the Third Judicial Circuit of Florida, is disqualified to sit in this case, a certificate of his disqualification having heretofore been filed herein by him, and the same for that reason

was presented for the purposes of this hearing to the undersigned, the Judge of the Circuit Court in and for Duval county, Florida.

That the exceptions taken and filed by the complainant to the said Master's report and findings, be and the same are hereby overruled and denied.

That the exceptions taken and filed by the defendant to the said master's report and findings be and the same are hereby sustained, except the first of said exceptions, which the defendant, by announcement of his counsel does not insist upon.

And that to the extent above indicated, the master's report and findings are hereby disapproved but otherwise than covered by the exceptions so sustained, the said master's report and findings are approved.

And this cause, having as above stated, been submitted by the respective parties for final hearing, and having been argued by counsel for the complainant and the defendant, and the court having considered the pleadings and the evidence as taken and filed herein, and being duly advised in the premises, it is further considered, ordered and decreed by the court:

That the court has jurisdiction of this cause, the parties hereto, and the subject matter hereof, and the court finds and decrees the equities in this cause to rest with and in favor of the defendant.

And the court further finds from the pleadings and the evidence herein that both parties claim under common grantors, one John High and one Rollin J. Nelson; that the said John High during the latter part of 1899 received and accepted from the said Rollin J. Nelson a timber conveyance conveying to the said John High a large body of timber in Echols County, Georgia, and Hamilton Coun-

ty, Florida, the timber involved in this suit being a portion thereof, and that in and by the said conveyance the said John High acknowledged the title and ownership of the land upon which said timber was standing to rest in the said Rollin J. Nelson and was bound thereby; that said timber conveyance was executed by one Ebenezer Wakely, acting as attorney in fact for the said Rollin J. Nelson, under a power of attorney which limited his authority to execute such instruments carrying with it the privilege to enter upon the lands described to a period not longer than ten years, but the court further finds from the evidence that the title to the fee in the lands upon which said timber was and is standing afterwards passed into one Tilden R. Wakely, who, in 1902, executed to and in favor of the said John High a second timber conveyance, confirming and ratifying the timber conveyance executed in 1899, and confirming the same for a period of fifteen years from the first day of January, 1900, and that afterwards the title to the fee in said land still remaining in the said Tilden R. Wakely, he, in May, 1904, executed a third timber conveyance to and in favor of the said John High, ratifying and confirming the two previous conveyances and extending the period of time during which the timber might be cut to the first day of January, 1916; that afterwards in May, 1904, the said John High sold the said timber to R. J. Camp and B. F. Camp, partners under the name of R. J. & B. F. Camp, and executed to and in favor of the said R. J. & B. F. Camp three certain transfers or assigns thereof, the purpose and effect of which, the court finds, was then and there to transfer, assign and set over unto the said R. J. & B. F. Camp, their heirs and assigns all of the right, title and interest of the said John High in and to the timber involved in this suit,

with the right and privilege to enter upon said lands and cut and remove the said timber for a period of time ending January 1st, 1916; that afterwards, the said R. J. & B. F. Camp bargained, sold and transferred said timber and the rights to enter upon said lands for the purpose of cutting and removing the same to one Dexter Hunter, now deceased, that the said Dexter Hunter has died leaving a last will and testament by the terms of which he willed and bequeathed the said timber and the right to enter upon the said land and to cut and remove the same, to his wife, Margaret Hunter, who the court finds, is now the owner of the same, and that the defendant herein The Hunter Company, acting under leave and license and at the direction of the said Margaret Hunter was when this suit was commenced then and there upon the said lands engaged in cutting and removing the timber thereon.

And the court finds that the complainant John Sandlin, after the sale of the said timber to The Hunter Company purchased  of the said John High the land  upon which the said timber is standing, taking from the said John High a special warranty or quit claim deed, and afterwards purchased the same land from the said Rollin J. Nelson, taking and accepting from him a quit-claim deed which by its terms was made subject to any outstanding or unexpired timber leases affecting the  said lands so purchased; and the court finds from the testimony herein that at the time of the purchase of said lands by the complainant from the said John High, and from the said Rollin J. Nelson, he the said complainant then and there had knowledge of the purchase of the timber thereon by said R. J. & B. F. Camp from the said John High and by the said Dexter Hunter from the said R. J. & B. F. Camp; that prior to the consummation of said

purchase by the complainant, he had knowledge of the sale of said timber by said John High, to the said R. J. & B. F. Camp, that at the time of the consummation thereof, the complainant, in consequence of such knowledge, reserved and retained from the purchase price a sum of money aproximately two thousand dollars, on account of the sale of said timber to said R. J. & B. F. Camp, and entered into a contract with the said John High setting forth the fact that said sum of money was retained by the complainant on account of such sale and providing for an accounting to the said John High for the amount thereof in case the said R. J. & B. F. Camp, or their assigns, should not cut and remove the said timber on or before the expiration of their right to do so, set forth in said contract as being the first day of January, 1916, and the court finds from the evidence that the complainant in making such purchase was not a bona fide purchaser for value and without notice, but that he was charged with notice, and made the said purchase and acquired such rights as may have been conveyed to him by the said John High and by the said Rollin J. Nelson subject and subordinate to the ownership of the said timber by the said R. J. & B. F. Camp and the said Dexter Hunter and their right to enter upon said lands and cut and remove the timber throughout a period extending to January 1st, 1916.

The court further finds from the evidence that the said John High prior to the time of his purchase of said timber from Rollin J. Nelson, had acquired some claim to the lands described in the bill of complaint based upon certain tax deeds executed thereto some years prior, but the court finds from the evidence and so holds that the said John High recognized the superior title of Rollin

J. Nelson to said lands and the timber thereon and purchased from said Nelson the said timber by and under the timber conveyance of 1899, and that by making such purchase and by virtue of the stipulation contained in said timber conveyance to the effect that the parties thereto recognized the superior right of the said Rollin J. Nelson, the said John High then and there recognized and acquiesced in the superior right and title of the said Rollin J. Nelson to the fee in and to said lands and to his superior right to the timber a purchase of which the said John High effected by and through the said timber conveyance.

And thereupon the court finds and decrees that the said Margaret Hunter at the time of the commencement of this suit, was the owner of the timber suitable for commercial purposes, on the lands described in complainant's bill, except the right to use the same for turpentine purposes, which right the court holds was and is subordinate to the right of the said Margaret Hunter to cut and remove the said timber, and that she holds the said timber together with the right and privilege of entering upon the said lands for the purpose of cutting and removing the said timber for and during the period of time ending January 1st, 1916; that the defendant, The Hunter Company, was then and there at the commencement of this suit, upon the said land engaged in actually cutting and removing the timber therefrom under and by virtue and leave of and license from the said Margaret Hunter, and under claim of title and ownership to and of the said timber resting in the said Margaret Hunter as aforesaid, that the said complainant, by and through his lessee, was then and there also occupying the said premises using the timber thereon for turpentine purposes

which right the court finds was reserved by the said John High in his transfer of said timber to R. J. & B. F. Camp, and which right accrued to the complainant under and by virtue of his purchase of said land from the said John High, but the court finds and decrees that the right to turpentine said timber was and is subordinate to the right of the owner of the timber to cut and remove the same at such times as he or she may elect so to do within the period aforesaid and that the complainant the said John R. Sandlin is the owner of the fee in said lands and the right to use the timber for turpentine purposes, subject to the restrictions above set out, but that his ownership of the fee and the right to use said timber for turpentine purposes is subject and subordinate to the ownership of the said timber by the said Margaret Hunter and the right of herself and her representatives to enter upon the said land and cut and remove the said timber within the term aforesaid.

Whereupon it is considered, ordered and decreed by the court that the temporary injunction and restraining order heretofore issued in this cause be and the same is hereby dissolved that the prayer of complainant's bill be denied, and that complainant's bill be and the same is hereby dismissed, at the cost of the complainant, and the Clerk of this court is hereby directed forthwith to tax the costs of this suit and file herein a statement or cost bill thereof, and the complainant, the said John R. Sandlin, is decreed to pay the said cost co taxed within thirty days after the filing of the cost bill thereof as herein directed, in default of which let execution issue.

Done and ordered at Chambers, in the City of Jacksonville, Duval County, Florida, on this the 27th day of November, 1914."

From this decree the complainant has entered his appeal and has assigned forty-three errors.

. We have carefully read the transcript of the record, as well as the extended briefs of the respective parties. After so doing and mature deliberation, we are constrained to the conclusion that substantial justice has been administered to the parties litigant by the final decree and that no reversible error has been made to appear to us. We see no useful purpose to be accomplished by any discussion of the numerous assignments, either collectively or in detail. As we have frequently held, "While the findings and conclusions of a chancellor, where the evidence is not taken before him, but before a master or examiner, by reason whereof he is not afforded an opportunity of seeing and hearing the witnesses, are not entitled to the same weight as the verdict of a jury, yet even in that case they should not be disturbed by an appellate court, unless they are clearly shown to be erroneous.

In equity, as well as at law, every presumption is in favor of the correctness of the ruilngs of the trial judge, and a final decree rendered by him, based largely so solely upon questions of fact, will not be reversed, unless the evidence clearly shows it to be erroneous.

Where the testimony is conflicting but there is evidence to support the finding of the chancellor, the decree will not be reversed on the evidence." Millinor v. Thornhill, 63 Fla. 531, 58 South. Rep. 34. See also Terra Ceia Estates v. Taylor, 68 Fla. 261, 67 South. Rep. 169.

Decree affirmed.

TAYLOR, C. J., and COCKRELL, WHITFIELD and ELLIS, JJ., concur.