NORA STIGLETTS, ANNIE E. URIOS, AND WILLIE MAE BROOKS, v. R B. MCDONALD, MINNIE LEE MCDONALD, and ONZIE TINDELL.

186 So. 233.
Division B.
Opinion Filed April 23, 1938.
On Rehearing October 10, 1938.

*James H. Finch, Parker & Parker,* and *J. Velma Keen,* for Appellants;

*Clyde W. Atkinson* and *W. C. Hodges,* for Appellees.

BROWN, J.--The Citizens Bank and Trust Company of Quincy, Florida, filed its bill of interpleader in the Circuit Court for Gadsden County. It appears from the bill that two deposits were made to the account of R. B. McDonald and his wife Minnie Lee McDonald; one for $500.00 was deposited two days after Mrs. Fannie Furlough's funeral, and the other deposit was for $1000.00 and was made on October 30, 1935, about a week after the funeral. Notice of two claims were filed with the bank. Mrs. Furlough's daughters were claiming the fund as heirs of Mrs. Furlough, and Onzie Tindell claimed the funds as a gift from Mrs. Furlough. It appears that the fund in question was part of a larger amount, in currency, which had been placed in the custody of the McDonalds by Tindell during the night following the day of Mrs. Furlough's death, which was on October 19, 1935.

A final decree of interpleader was entered directing the bank to pay the money into the registry of the court and allowing it attorney's fees and costs. The court having thus allowed the bank to withdraw the case now became a controversy to settle the two adverse claims and to determine to whom the money should go.

After the filing of considerable pleadings, the taking of testimony, the propounding of interrogatories and answers thereto, and the arguments of counsel, the court entered its final decree, finding that Onzie Tindell, defendant, by virtue of a gift made to him by the late Fannie Furlough, was entitled to the balance of the fund, after costs of the suit, as

agreed to by counsel, were first paid, and it was ordered that the clerk pay over the balance of the fund now in custody, or that might come into his custody in this cause, to the said Onzie Tindell. The above mentioned sum was augmented by the deposit into court before the final decree was entered of the further sum of $1,530.00, deposited by Dr. B. F. Barnes of Chattahoochee, such sum having been turned over to Dr. Barnes by Onzie Tindell some time prior to the commencement of these proceedings.

Appeal was taken from this final decree and six assignments of error propounded. They are, however, reducible to two assignments: (1) That the Court erred in finding that the money was the property of the defendant Tindell, based upon a gift, rather than the property of the daughters as heirs of Mrs. Fannie Furlough. (2) That the Court erred in not striking from the record the testimony of Mrs. Minnie Lee McDonald as to conversations and transactions with Mrs. Furlough, deceased.

The first assignment above raises the question of whether or not the evidence is sufficient to establish a completed gift.

As was said in the opinion by Mr. Justice STRUM in the case of Farrington v. Harrison, 95 Fla. 769, 116 So. 497:

"We also bear in mind the oft-reiterated rule that, while the findings of the Chancellor on the facts where the evidence is heard by him, and the witnesses are before him, are entitled to more weight in the appellate court than where such findings are made in a cause where the testimony was not taken before the chancellor, yet in either case the chancellor's findings should not be disturbed by an appellate court unless shown to be clearly erroneous. Sandlin v. Hunter Co., 70 Fla. 514, 70 So. 553; Travis v. Travis, 81 Fla. 309, 87 So. 762; Lucas v. Wade, 43 Fla. 419, 31 So. 231.

"On the other hand, where a decree is manifestly against

the weight of the evidence, or contrary to, and unsupported by, the legal effect of the evidence, then it becomes the duty of the appellate court to reverse such decree. Carr v. Lesley, 73 Fla. 233, 74 So. 207; Florida National Bank v. Sherouse, 80 Fla. 405, 86 So. 279; McGill v. Chappelle, 71 Fla. 479, 71 So. 836; Lithtsey v. Washington Park Properties (Fla.) 112 So. 555."

Expressed in other words, where there is a clear lack of proof to establish some necessary element which is essential to the finding of the chancellor, then this Court will reverse such decree.

In the case at bar, Onzie Tindell claimed the fund in question by virtue of a gift from Mrs. Furlough, deceased. All of the essential elements of a gift must be proven. As was said in 12 R. C. L.

"In the case of a gift *causa mortis,* the intention to make a gift must be shown by clear and precise evidence, and it must also clearly appear that there was an actual gift perfected by delivery."

Delivery by the donor is an essential element in the establishment of a gift. This may be proven either by direct or circumstantial evidence. Under section 4372 of Comp. Gen. Laws the court correctly struck the testimony of Onzie Tindell in regard to any transaction with or communication between such witness and Mrs. Furlough the deceased. Therefore there was no direct evidence to establish a delivery, and the question to be determined is whether the circumstantial evidence is sufficient to establish this necessary element of a gift.

Evidence was introduced tending to prove that Mrs. Furlough had, on numerous occasions, said that she was going to leave all her property to Onzie; that Mrs. Furlough's attitude to Onzie Tindell, who had lived with and waited on her for a large part of some ten or eleven years, was

that of mother to son; that she was not on friendly terms. with her daughters and had made the statement a number of times that she did not want them to look upon her dead face; that Onzie Tindell had possession of the money immediately after Mrs. Furlough's death; and that he was seen with a package under his arm a day or so before Mrs. Furlough's death, which he testified had the money in it.

Taking the evidence introduced by the defendant Tindell (Appellee) as true, the most that is established is that Mrs. Furlough intended to leave everything to him, and that he had possession of the money and exercised control over it immediately after her death.

Circumstantial evidence must as a general rule be of such a conclusive nature that it is not reasonably susceptible of two equally reasonable inferences.

"The value of circumstantial evidence consists in the conclusive nature and tendency of the circumstances relied upon to establish any controverted fact. Such evidence is always insufficient where assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true; for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of proof. Whetson v. State, 31 Fla. 240, 12 So. 661." Florida East Coast Ry. Co. v. Acheson, 135 So. 511, 102 Fla. 15, 87 L. R. A. 905.

A later case modifies the rule in civil cases as follows:

"Where circumstantial evidence is relied on in a civil case to prove an essential fact or circumstance essential to recovery, the rule is that the particular inference of the existence of the fact relied on, as arising from the circumstances established by the evidence adduced, shall outweigh all contrary inferences to such extent as to amount to a preponderance of all the reasonable inferences that might be drawn from the same circumstances. This is a less rigid

rule than applies in a criminal case, where the inference drawn must not only be consistent with the fact sought to be proved, but wholly inconsistent with any other reasonable inference to the contrary." Ring v. Weiss-Patterson Lumber Company, 124 Fla. 272, 168 So. 858.

Under the facts established by the testimony in this case, it appears that Tindell stayed in the Furlough home alone while Mrs. Furlough was in the hospital in Dothan, Alabama. It also appears that Tindell had access to Mrs. Furlough's suit case and handbag, immediately after her death. He was the only person with her at the time of her illness that she could depend upon. He made no claim of a gift of the money until after her death.

As was said in the case of Maxler v. Hawk, 233 Pa. St. 316, 82 Atl. 251, Ann. Cas. 1913 B 559:

"The mere fact that a person claiming property as a gift has it in his possession after the death of the alleged donor has little if any weight on the question of a gift, *where the claimant has had access to the property and effects of the alleged donor during his last sickness, or after his death.* 14 Am. & Eng. Ency. of Law (e ed.) 1050, and cases cited in note."

See also 28 C. J. 679.

Tindell's possession of the money, then, of itself, is not evidence of a conclusive nature. It has little if any conclusive weight *per se* on the question of a gift, as the inference that Mrs. Furlough entrusted it to him for safe keeping, or that he took possession of it while she was very ill or after her death, is just as reasonable as the hypothesis that there was a completed gift. Possession, under the facts in this case, was of itself consistent with a mere custody or agency.

Nor is proof of the mere intention to make a gift sufficient. There must also be a delivery, either actual or

constructive, and the Court is of the opinion that there is no direct or positive evidence in this case sufficient to establish this essential element of a completed gift.

In 12 R. C. L. 973, the rule is stated:

"When the claim of a gift is not asserted until after the death of the alleged donor, it should be sustained by clear and satisfactory evidence of every element which is requisite to constitute a gift, and somewhat the same degree of proof should be produced when the gift is to be supported, if at all, not on direct proof, but on mere circumstantial evidence."

To like effect, sec 28 C. J. 681.

This Court recognized the rule in the case of Garner v. Bemis, 87 So. 426, 81 Fla. 60:

"When the claim of a gift is not asserted until after the death of the alleged donor, it should be sustained by clear and satisfactory evidence of every element which is requisite to constitute a gift."

While neither the intention of Mrs. Furlough that Onzie Tindell should have everything that she left at the time of her death, nor the further fact of his possession of the money immediately after her death, if considered separately, would be sufficient to sustain an inference that she actually delivered the money to him before her death, yet it is contended that when both facts are considered together, they are sufficient to sustain the chancellor's findings and decree. See 28 C. J., 672-3, 678. And as there was ample evidence of Mrs. Furlough's intention, in addition to Mrs. McDonald's testimony, the refusal to strike her testimony is not reversible error.

Taking the testimony as a whole, while there are some portions of it which throw suspicion on just how Tindell acquired possession of this money (which he says in his claim amounted in all to some $5,500.00), we do not con-

sider that this Court would be justified in setting aside the chancellor's conclusion as to the material facts. The decree will be, and is hereby, accordingly

Affirmed.

WHITFIELD, P. J., and CHAPMAN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

### ON REHEARING.

PER CURIAM.—This is a controversy to determine the ownership of certain moneys left by Fannie Furlough at her death. The facts are fully stated in the main opinion filed April 23, 1938. The petition for rehearing is grounded primarily on failure to prove delivery of the rem.to Onzie Tindell by Mrs. Fannie Furlough, the deceased. This is the main question for determination.

We have again reviewed the record with special reference to whether or not there was in fact a delivery of the money in question by Mrs. Furlough to Onzie Tindell, the claimant. We do not understand that actual delivery in such a case must be proven by an eye witness or witnesses. If the facts and circumstances clearly and satisfactorily show delivery, that is sufficient.

Now let us see what the facts and circumstances show. It is not contended that delivery is supported by direct and positive evidence. It is shown that Onzie Tindell was a distant relative of Mrs. Furlough, that he was a mental defective perhaps little if any above the moron type, that he had been in the Furlough home for ten years or longer during which time he had been treated as a member of the family. He had been hired out by and worked for the Furloughs who were very much attached to him and he to them. He was the main reliance of Mrs. Furlough in her last months and ministered to her in her last illness. The

mental capacity of Mrs. Furlough is not challenged and witness after witness testified that she had stated in their presence that she wanted Onzie to have all she had, that she had nothing for her children and did not want them to look on her face when she was dead. Her desire, in other words, with reference to the disposition of her property was conclusively shown and is not denied. Her children lived in distant parts of the State and it is not shown that any of them ministered to her or comforted her in any way during her last illness. The money was not found in Onzie Tindell's possession until after Mrs. Furlough's death but he testified that she gave it to him several days before. Even if his testimony on this point is incompetent under the statute the evidence of two other witnesses tends to show that it was in his possession before her death and when taken in connection with her expressed desire we may readily infer that she made manual delivery to him. As against this showing to hold otherwise would amount to the presumption that Tindell was guilty of larceny and the evidence is far short of proving that.

The chancellor had all these facts and circumstances before him; he knew the parties and the local coloring which, though mute, often speaks louder than vocal testimony. A higher degree of proof might have been exacted but in view of this chain of circumstances supporting the Chancellor's decision we do not feel warranted in disturbing it.

Our former opinion is accordingly reaffirmed on rehearing.

Affirmed on rehearing.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

TERRELL, J., concurs in the opinion and judgment.

ELLIS, C. J., and BUFORD, J., dissent.

BUFORD, J. (dissenting)—I cannot agree with the conclusions reached and expressed in the majority opinion prepared after argument on rehearing granted.

If the alleged gift of the money involved was a gift at all, it was a gift *inter vivos*. The rule as to such gifts is correctly enunciated in 28 C. J. 621, as follows:

"A gift *inter vivos* as its name imports, is a gift between the living. It is a contract which takes place by the mutual consent of the giver, who divests himself of the thing given in order to transmit the title of it to the donee gratuitously, and the donee who accepts and acquires the legal title to it. It operates, if at all, in the donor's lifetime, immediately and irrevocably; it is a gift executed; no further act of parties, no contingency of death or otherwise, is needed to give it effect."

On page 622 of the same volume we find the text, as follows:

"Strictly speaking all gifts between living persons, whether made in expectation of death or not, are of course gifts *inter vivos;* but a gift *causa mortis,* while resembling what is known technically as a gift *inter vivos* in some respects, presents also several important points of difference. It is essential in both that there be a donative intent, and the gift be completely executed by delivery. Furthermore, neither gift is good as against the donor's creditors where there is a deficiency of assets. On the other hand, a gift *causa mortis* differs from a gift *inter vivos* in that it resembles a legacy, and is made in view of expected or impending death. The vital distinction, however, between a gift *inter vivos* and a gift *causa mortis* is that the latter is revocation by the donor and does not pass an irrevocable title until the death of the donor, while a gift *inter vivos* vests an irrevocable title on delivery.

"The test whether the gift is one *inter vivos* or one *causa*

*mortis* is not the mere fact that the donor is *in extremis*, and expects to die, and does die of that illness, but whether he intended the gift to take effect *in praesenti*, irrevocably and unconditionally, whether he lives or dies. A gift, made with intent that it shall take effect immediately and irrevocably, and fully executed by complete and unconditional delivery, is good and valid as a gift *inter vivos*, although at the time the donor is *in extremis*, and dies soon after."

In the case of Garner v. Bemis, 81 Fla. 60, 87 Sou. 426, we said:

"Where a life insurance policy is claimed as a gift without assignment to one not the beneficiary designated therein, proof of the actual or constructive delivery of the policy with intent to pass the title irrevocably must be clear and convincing. A sufficient delivery or a complete and absolute surrender of all legal power and dominion over the policy, with an intent on the part of the donor to part absolutely with the title, must be affirmatively shown by evidence. Where the insured has a right to change the beneficiary in a policy on his life, and expresses an intent to make such change, but in fact does not do so, the intent alone is ineffectual. Merely expressing an intent to change the beneficiary and notifying the insurer of such intent is insufficient. Where the policy is not assigned to or duly delivered or surrendered as a gift the title thereto remains in the assured."

And again in that case we said:

"When the claim of a gift is not asserted until after the death of the alleged donor, it should be sustained by clear and satisfactory evidence of every element which is requisite to constitute a gift."

Citing 12 R. C. L. 932 and 973.

In Thomas v. Tilley, 147 Ala. 189, 41 Sou. 854 the same rule was enunciated.

In the case of Szabo, *et al., v.* Speckman, *et al.,* 73 Fla. 374, 74 Sou. 411, Mr. Justice ELLIS, speaking for the court, said:

"And in the case of Powell v. Leonard, *supra,* Mr. Chief Justice DUPONT said that what constitutes a good delivery is a question of great difficulty. Its proper solution can only be arrived at by considering not only the locality of the thing donated, but also its nature and kind, and that the delivery of keys as in the case of goods in a warehouse or trunk has even been held to be a sufficient delivery; he also thought that a delivery of a conveyance as in the case of vessels at sea was sufficient. Gifts *causa mortis,* as the Chancellor said in this case, 'leaves too much room for fraud with relation to the estates of deceased persons.' For that reason, and the numerous attempts to sustain such gifts by fraud and perjury led to the enactment of the statute for the prevention of frauds and perjury."

In 28 C. J. 681 the rule is enunciated that: It is a general and well established rule that the burden of proof is on one claiming to be the donee of property to establish all facts essential to the validity of the gift. 28 C. J. 669, and cases there cited under note 36 thereto appended.

I do not think there is any legal evidence in this case establishing delivery of the money to the party claiming to be the donee thereof. It is true that the alleged donee testified that the money involved was given to him and delivered to him by the donor during her lifetime but, in my opinion, that evidence could not be considered because the donee was not a competent witness in this case under the provisions of Section 2505 R. G. S., 4372 C. G. L. See Knowles v. Boylston, 103 Fla. 20, 137 Sou. 6; Monroe v. Carroll, 80 Fla. 206, 86 Sou. 193; Holmes v. Kilgore, 89 Fla. 194, 103 Sou. 825; Madison v. 95 Fla. 321, 116 Sou. 31.

It, therefore, follows that although the evidence is abun-

dantly sufficient to establish the fact that it was the wish of Mrs. Furlough that such property as she might have at the time of her death should become the property of the alleged donee, the evidence is entirely insufficient in law to establish the fact that she did deliver as a gift the money involved to the alleged donee. If she did not deliver such property to the alleged donee as a gift, then at her death it became the property of her heirs at law, her wishes to the contrary notwithstanding, and when it became their property the courts are without power to divest them of their property rights under the law, regardless of how convincing the evidence might be that such result was not desired by the deceased owner during her lifetime.

For the reasons stated, I think the decree appealed from should be reversed.

ELLIS, C. J., concurs.