GENERAL ACC. FIRE & LIFE ASSUR.
CORPORATION, Limited, v.
SCHERO et al.
No. 11764.

Circuit Court of Appeals, Fifth Circuit.
April 16, 1947.
Rehearing Denied May 19, 1947.

G. L. Reeves and Calvin Johnson, both of Tampa, Fla., for appellant.

Morrice S. Uman and R. W. Shackleford, both of Tampa, Fla., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

Plaintiff below was the insurer of the defendants below against burglary. Between Saturday afternoon, February 7, 1942, when defendants closed their sponge warehouse, and Monday morning, February 9, burglars removed a quantity of sponges from the warehouse. Plaintiff sued to determine its liability on the policy for the loss. On a former trial defendants obtained judgment for the loss on their cross-claim. We reversed the judgment on appeal [1] and sent the case back for a new trial. We defined the issues on retrial to be:

(1) Did the loss occur before or after the effective time of cancellation of the policy by the plaintiff?

(2) Was the defense of failure to keep books and accounts under an "iron safe clause" waived?

(3) Was the defense of failure to keep books and accounts under the "iron safe clause" properly made out?

Before the second trial the defendants and counter-claimants abandoned their claim of waiver. The effective time of the cancellation was 12:01 a. m., Sunday, February 8, 1942. The court below submitted to the jury these two issues for their consideration: (1) Whether the defendants sustained a loss by burglary prior to 12:01 a. m., Eastern Standard Time, February 8, 1942; and (2) whether defendants had complied with the provision of the policy relating to keeping books and records. On the issue of the time of the loss, the court directed the burden of proof was on the defendants; on the other issue the court directed the burden was on the plaintiff to establish that the books and records did

---

[1] General Accident Fire & Life Assurance Corp., Ltd., v. Schero, et al., 5 Cir., 1945, 151 F.2d 825.

not substantially comply with the policy provision.

The plaintiff, after all evidence was in, moved for a directed verdict. This motion was overruled. The jury returned a verdict for defendants and counter-claimants, and judgment on the verdict was entered for the amount of the loss. The plaintiff then moved for judgment notwithstanding the verdict. This motion was denied. The plaintiff thereupon appealed.

On this appeal the plaintiff contends:

"1. That as against both the direct and circumstantial evidence that the burglary in question was carried out on Sunday night, February 8 (after cancellation), the evidence adduced by appellee, consisting of circumstances only, was too flimsy to authorize the jury to speculate that the loss occurred before 12:01 A. M. February 8, 1942; and

"2. That the evidence now disclosed that the books and records kept by appellees were insufficient to disclose the loss with reasonable certainty, hence the contract provision relating to that subject exonerated appellant."

Since we are reversing the judgment for the first reason suggested by the plaintiff, we need not consider the second reason.

■ In a case over which a federal court has jurisdiction based upon diversity of citizenship between the parties, the law of the State in which that court sits governs the question of the sufficiency of the evidence to support the submission of a claim to the jury.[2]

In Mutual Life Insurance Co. of New York v. Hamilton[3] we had occasion to discuss the law of Florida governing the sufficiency of circumstantial evidence for its submission to the jury. We said:

"The plaintiffs have relied wholly upon inferences which they draw from circumstantial evidence to prove death by suicide on the 29th day of December, 1928. There is no direct testimony of death at any time or in any manner. Since the opinion by Judge Sibley in the case of Mutual Life Ins. Co. of New York v. Zimmerman, su-pra, [5 Cir., 75 F.2d 758], the Florida rule that circumstantial evidence relied upon in a civil case must not only be consistent with the theory that authorizes recovery but must fairly and reasonably exclude any other explanation of the facts, has been modified by King v. Weis-Patterson Lumber Co., 124 Fla. 272, 168 So. 858; Stigletts v. McDonald, 135 Fla. 385, 186 So. 233; and Fireman's Fund Indemnity Co. v. Perry, 149 Fla. 410, 5 So.2d 862, 863. In the last-cited case the Supreme Court of Florida said:

" 'In the case of Reed et vir. v. American Ins. Co. of Newark, New Jersey, 128 Fla. 549, 175 So. 224, 225, we stated the rule to be applied in testing the sufficiency of circumstantial evidence in civil cases, as follows:

" ' "In civil cases the preponderance of evidence required, where circumstantial evidence is relied on as the method of proof, is a preponderance of all reasonable inferences that might be drawn from the circumstances in evidence to prove the principal fact sought to be established sufficient to outweigh all other contrary inferences. King v. Weis-Patterson Lumber Co., 124 Fla. 272, 168 So. 858."

" 'In Stigletts v. McDonald, 135 Fla. 385, 186 So. 233, 235, we said:

" ' "Circumstantial evidence must as a general rule be of such a conclusive nature that it is not reasonably susceptible of two equally reasonable inferences." '

"It, therefore, is not the rule in Florida now that circumstantial evidence in a civil case must exclude every other reasonable hypothesis than the one proposed to be proven. It is sufficient now if the circumstantial evidence amounts to a preponderance of all reasonable inferences that can be drawn from the circumstances in evidence to the end that the evidence is not reasonably susceptible of two equally reasonable inferences.

"Do the inferences which tend to support the theory of a prompt dissolution outweigh the inferences which support merely a disappearance? Does the presumption

2 Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284.

3 5 Cir., 1944, 143 F.2d 726, 731, 732.

of death under the circumstances outweigh the presumption against suicide?

\* \* \* \* \* \* \* \*

"\* \* \* It is not necessary that this Court concur in the facts as found by the jury, but merely to determine that a jury question was involved in a controversy of evidence, inferences, and presumptions as to the effect of which the minds of reasonable men might differ, and in the jury's solution of which we cannot say there was no substantial support."

■■ The substance of this holding has been reaffirmed by the Supreme Court of Florida [4] in these words: "Upon a motion for directed verdict made at the close of the plaintiff's case the evidence given on behalf of the plaintiff must be considered as true. Dempsey-Vanderbilt Hotel v. Huisman, 153 Fla. 800, 15 So.2d 903. For the purpose of the motion the moving party admits not only the facts adduced, but every conclusion favorable to his adversary fairly and reasonably inferable therefrom. Florida Motor Lines, Inc. v. Bradley, 121 Fla. 591, 164 So. 360; Talley v. McCain, 128 Fla. 418, 174 So. 841; Russell v. Atlantic Coast Line R. Co. 129 Fla. 535, 176 So. 778; Hastings v. Taylor, 130 Fla. 249, 177 So. 621; Duval Laundry Co. v. Reif, 130 Fla. 276, 177 So. 726; Fain v. Cartwright, 132 Fla. 855, 182 So. 302; Carter v. Florida Power & Light Co., 138 Fla. 220, 189 So. 705; Smith v. Burdines, Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115. But when there is an absence of all evidence to establish liability, and nothing from which liability may be fairly and reasonably inferred, the motion for directed verdict should be granted. Sec. 54.17, Florida Statutes 1941 F.S.A.; Crandall, Florida Common Law Practice, pp. 305, 306, § 208, and cases there cited."

■ Applying the Florida law to the facts before us, we believe that a jury question was not involved "in a controversy of evidence, inferences, and presumptions as to the effect of which the minds of reasonable men might differ, and in the jury's solution of which" we can say there was substantial support. In other words, the motion for a directed verdict or for a judgment notwithstanding the verdict should have been granted because there is no evidence from which liability may be fairly and reasonably inferred.

Johnny Jones, a Negro, testified that on a Saturday afternoon one Gonatas drove one Cardullias, himself, and Jackson, another Negro, to the warehouse "where we were supposed to get the sponges from"; that they had two hack saws in their possession; that they "rode by" defendants' warehouse; that the next night (Sunday) around 9:00 o'clock Gonatas picked Jackson and him up, and the three drove to the warehouse; that Gonatas and Jackson sawed the lock off the side door of the warehouse; that the three put some sponges in the back seat and trunk of Gonatas' two-seated automobile; that the sponges were carried to, unloaded at, and stored in a "little" barn next to an unknown person's house; that on the way back Cardullias was picked up; that seven or eight trips were made to the barn, but that he and Jackson made only the first trip; and that after the last trip he and Jackson were driven home around 11:30. He further testified that all the sponges were loose except one bale; that they had some sacks, and these were filled with loose sponges; that on the same night his wife and the wife of Jackson went to church; and that on Saturday night there was no church.

One Frank Byers testified that on Saturday, February 7, Gonatas and Cardullias spent the evening from 8:00 or 8:30 to 12:30 or 1:00 at his home. Hennessee, the principal of a local school who was at the Byers' home that evening, corroborated the testimony of Frank Byers.

One Himes, a friend of Gonatas and Cardullias, testified that: On Sunday afternoon, February 8, at about 5:00 or 6:00 o'clock, Cardullias asked Himes whether he could store some goods in an empty chicken house; he did not know the nature of the property stored there until the sheriff and another person found the sponges.

---

[4] Hughes v. Miami Coca Cola Bottling Co., 1944, 155 Fla. 299, 19 So.2d 862, 863, 864.

A Mrs. Cleveland testified that, standing on her porch only two blocks from defendants' sponge warehouse on the Saturday night in question shortly after 11:30, in the bright light of three electric lights, she saw a red truck passing her house from the direction of the warehouse; that the truck, with sides partly made of wire, was filled with sponges, both loose and baled. She could not describe the appearance of the driver. She further testified that in the Monday morning St. Petersburg paper she read of the burglary and remarked, "I wonder if that was the truck I saw going by the house last night." In answer to the next question she remarked, "That was late on Saturday night."

On cross-examination in answer to the question: "What I am trying to get at is how you could be definite that it was Saturday or Sunday night that you saw the truck?"

Mrs. Cleveland testified: "I think it was Saturday night like I told you."

She further testified that between her house and the defendants' sponge warehouse there were two other "sponge houses"; that the truck had no lights on; and that at that time of night it was unusual for trucks to pass by her house.

On redirect she testified in answer to:

"Please state whether or not you are positive as to the night on which you saw this truck,"

"It was Sunday morning or Saturday night; I don't know whether you would call it Sunday."

The parties stipulated that after the burglary was discovered the first St. Petersburg morning paper was published on Tuesday, and the next Tarpon Springs paper was not published until February 13, several days later. The parties also stipulated that Cardullias and Gonatas were convicted in the Circuit Court of Pinellas County for the theft involved in this litigation and that upon appeal the Supreme Court of the State of Florida set aside the conviction on grounds not material to this case.

In order to support the verdict the jury must have found that the burglary occurred before 12:01 a. m., Eastern Standard Time, February 8, 1942. The testimony of Mrs. Cleveland with reference to the truck in nowise tied it into or connected it with the burglary. No reasonable man could arrive at the conclusion from her testimony that the burglary occurred before 12:01 a. m., Eastern Standard Time, February 8, 1942. Therefore, no evidence existed from which liability may be fairly and reasonably inferred.

No evidence in the record identifies the truck she saw with any truck the burglars may have used; no evidence exists to the effect that they used a truck. No evidence identifies the occupant or occupants of the truck she saw with the burglars. Neither the fact that the truck had no lights nor the fact that it was unusual for a truck to pass Mrs. Cleveland's house at that late hour connects the truck with the burglary. No evidence identifies the sponges as those the defendants lost. The mere fact that the defendants' warehouse was nearby does not identify the sponges, because other "sponge houses" were closer to Mrs. Cleveland's house. An employee of defendants testified that when he recovered the sponges some of them were loose and others were in bags. Mrs. Cleveland testified that part of the sponges on the truck were loose and part in bales. We do not think she meant "bags" by "bales" because she would not have known what the "bags" contained. Furthermore, defendants' employee testified only one "bale" was stolen.

On the foregoing trial Jackson, one of the four burglars, was temporarily absent on a sponge boat. Upon a new trial he may be available as a witness; if so, his testimony should be taken.

The judgment appealed from is reversed, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.