**FLORIDA BAR, Inc. v. STATE BEVERAGE DIRECTOR.**

Circuit Court, Palm Beach County.

April 27, 1954.

Harry Goodmark, West Palm Beach, for petitioner.

John C. Reed, Assistant Attorney General, Miami, for respondent.

C. E. CHILLINGWORTH, Circuit Judge.

This petition for writ of certiorari was duly presented to the court by counsel for the parties for final disposition.

The petitioner, a corporation, operates a bar in colored town in West Palm Beach, with colored employees. At approximately 9:30 o'clock in the evening of August 21, 1953 three supervisors of the state beverage department entered the bar, proceeding 4 or 5 feet inside the building. Two men were seated on the north side, in a booth, and had a lot of tickets spread out in front of them. Two of the supervisors went to the booth and took charge of the tickets and money that was there. Clinton, one of the men there, said he had just sold the other man some bolita tickets. The beverage inspectors then confiscated some 6,100 bolita tickets and had Clinton arrested.

The distance between the booth and the bar was some 12 to 14 feet—the booth was open to the bar so far as any one at the bar looking into the booth was concerned. A waitress and one or two

bartenders were on duty at the bar, there were some 20 people in the bar seated or dancing. One of the supervisors testified that there was no reason why the booth and bolita tickets should not be in plain view of the man behind the bar—he added that he could not see or give clear testimony as to whether there was any attempt to conceal the activity in the booth or whether everything was lying right on top of the table.

The testimony further showed that Clinton had no connection with the bar or any of its employees and had just gone into it to close this sale only a few seconds before. He tried to hide in the booth, sell the tickets and get out—the evidence fails to disclose any participation in or actual knowledge of the transaction on the part of the plaintiff or any of its employees.

The above statement of the evidence is intended to indulge all inferences in favor of the respondent. There was no conflict in the testimony of the various witnesses.

The petitioner was charged with violating section 849.01, Florida Statutes 1953, in that petitioner or the servant of petitioner did maintain a gaming table or room, or gaming implements, or house, for the purpose of gambling.

In the second charge there was embraced the allegation that petitioner, contrary to section 849.01, controlled or managed, exclusively or with others, or suffered or permitted a person to play for money or valuable things in a game of chance, to-wit, a lottery.

The third charge was that petitioner violated section 823.05 of the statutes in that it maintained a nuisance about the licensed premises in conducting open and notorious lottery activities therein.

After hearing the evidence the state beverage director found that the licensee "did have, keep and maintain bolita tickets for sale" and "did suffer or permit persons to play bolita for money at its licensed place of business" and "did maintain a nuisance by allowing open and notorious lottery activities at its place of business." Petitioner's license was suspended for a period of 15 days.

The evidence wholly fails to sustain these findings. There was no participation at all by the licensee or any of its employees or agents in the bolita transaction—there was only an isolated sale carried on surreptitiously without any consent, connivance or knowledge on petitioner's part.

This court holds that actual knowledge on the part of the holder of the beverage license, or its employees or agents, concerning the charges stated in the three sections of the statute, is essential to

support a conviction. This actual knowledge may be established by circumstantial evidence—but this evidence fails to meet the test. King v. Weis-Patterson Lumber Co. (Fla.), 168 So. 858; Stigletts v. McDonald (Fla.), 186 So. 233. There was a departure from the essential requirements of law in the action of the beverage director, and it is accordingly ordered that the director's order dated February 2, 1954 be and it is quashed, with costs taxed against the respondent.